*464 OPINION OF THE COURT
Nicholas A. Clemente, J.
On October 15, 1983, Jacqueline Frias gave birth to a son, Osiris, at Woodhull Hospital. The infant, from birth, suffered neurological damage, a seizure disorder and other conditions. Three days later, on October 18, 1983, Osiris was transferred to Kings County Hospital Center (Kings County), where he remained until November 1, 1983. Thereafter, on December 1, 1983, he was transferred to the Downstate Medical Center (Downstate) under whose care he has since remained. For two days, however, December 5 and December 6, 1983, he was referred back to Kings County in order for a CAT scan to be performed.
This action in medical malpractice was commenced against the New York City Health and Hospitals Corporation on April 17, 1985 by summons and verified complaint. The action is brought by Jacqueline Frias on behalf of herself and Osiris with four causes of action being alleged. The third and fourth causes of action are derivative ones on behalf of the plaintiff mother.
The defendant now moves for an order dismissing the third and fourth causes of action pursuant to CPLR 3211 upon the grounds that this action was not commenced within the time specified in McKinney’s Unconsolidated Laws of NY § 7401 (L 1969, ch 1016, as amended) and General Municipal Law § 350-i.* These sections require that an action brought against the New York City Health and Hospitals Corporation be commenced within one year and 90 days of its accrual.
In support of the motion, defendant contends that, at best, the last treatment rendered at Kings County occurred on December 6, 1983 so that the plaintiff’s mother’s causes of action (which are not tolled by plaintiff’s infancy) should have been commenced by March 5, 1985; and that the action having been initiated on April 17, 1985 was, therefore, untimely. In anticipation of plaintiff’s opposition, the defendant contends that Downstate’s treatment of the infant plaintiff cannot be considered treatment continuous with that rendered by Kings County so as to place this action within the "continuous treatment” toll to the Statute of Limitations.
Plaintiffs in opposing the motion maintain that Kings *465 County and Downstate have a close relationship and that Kings County referred Osiris to Downstate for treatment of the condition, which is the subject of the malpractice action and the referral was necessary because Kings County was unable to provide such treatment. Thus, plaintiffs argue, the referring of Osiris to Downstate did not sever Kings County’s relationship with the infant. Evidence of the continuity of treatment is his referral back for the taking of a CAT scan on December 5 and December 6, 1983.
Defendant, on the other hand, contends that Downstate is not connected with the New York City Health and Hospitals Corporation, but is a facility of the State of New York. It further points out that there is no master-servant relationship between Downstate and Kings County and that a mere referral for treatment between unrelated hospitals does not constitute continuous treatment.
The emergent issue is when can treatment rendered by one hospital be deemed continuous with that rendered by a referring hospital.
While the concept of the tolling of the Statute of Limitations by virtue of continuing treatment is most often associated with the extension of time to commence an action because a health provider has resumed a prior treatment, the courts have expanded the toll so as to include additional defendants.
Thus, where treatment is provided by more than one health provider, the continuing treatment of one will be imputed to the other in the presence of an agency or some other significant continuing nexus between the two health providers (cf. McDermott v Torre, 56 NY2d 399; Cotto v City of New York, 99 AD2d 748). While the continuous treatment doctrine enjoyed a period of expansion (Fonda v Paulsen, 46 AD2d 540) following its initial elucidation in Borgia v City of New York (12 NY2d 151) the Court of Appeals has of late restricted its parameters especially where a litigant is seeking to extend the Statute of Limitations as against a laboratory or pathologist that misread a biopsy (Meath v Mishrick, 68 NY2d 992; McDermott v Torre, supra).
The instant case does not, however, appear to fall within the restrictive ambit of Meath (supra) and McDermott (supra) but rather presents a question of the nature of the referral of Osiris between the two hospitals juxtaposed with the issue of what is the nexus between the hospitals. A resolution of the *466 issues presented emerges from a comparative analysis of Blythe v City of New York (119 AD2d 615) and Grellet v City of New York (118 AD2d 141) vis-á-vis Cotto v City of New York (supra).
In Blythe (supra) and Grellet (supra), the court refused to apply the continuous treatment doctrine when there was no evidence (in the former) of an agency relationship between the subsequent treating hospitals or (in the latter) of a continuity of treatment at the same hospital. Blythe involved an infant plaintiff last seen at Kings County on July 14, 1975. In March 1976, she was admitted to Blythedale Children’s Hospital at the referral of Columbia Presbyterian Hospital. In February 1977, the United Cerebral Palsy School referred the infant plaintiff to Queens Hospital. Based on the treatment received at Kings County and Queens Hospital, units of the New York City Health and Hospitals Corporation, plaintiffs commenced an action against the corporation. The corporation moved to dismiss the action on the grounds that there had not been timely service of a notice of claim. Plaintiffs contended, however, that the treatment received at Queens Hospital was continuous with the Kings County treatment. In rejecting this argument, the Appellate Division stated that there was no direct referral by Kings County which could have established that the sequence of medical treatments administered to the infant plaintiff at the respective institutions constituted a single continuous course of treatment.
In Grellet (supra), malpractice resulting in neurological injuries was committed on the infant plaintiff on July 3, 1970, at Elmhurst General Hospital, a hospital operated by the New York City Health and Hospitals Corporation. She was discharged on July 10, 1970 without any further treatment being contemplated. While she returned to Elmhurst on several occasions for emergency room treatment unrelated to her neurological condition, the hospital did not undertake to treat the neurological condition until March 1972, 20 months after her release. In holding that the notice of claim filed thereafter was not timely served by the plaintiffs, the Appellate Division found the continuous treatment doctrine inapplicable notwithstanding her intermittent visits to Elmhurst. The court pointed to the fact that the infant was receiving treatment for her neurological disorders at other institutions having no nexus with Elmhurst.
On the other hand, in Cotto (supra) the continuous treatment doctrine was applied against the New York City Health *467 and Hospitals Corporation for subsequent treatment rendered by a private institution (Brooklyn Hospital) to which the plaintiff had been referred by the city-operated Cumberland Hospital. In reaching this conclusion, the Appellate Division pointed to the contractual relationship between the two hospitals providing for an interchange of certain services, as well as the nature and need for the referral. Hence, the court stated, "It is clear that plaintiff needed further treatment when Cumberland Hospital referred him to Brooklyn Hospital. In the record before us, there is no indication that either Cumberland or the patient considered treatment to be completed at the time of this referral. Plaintiff placed his confidence in the hands of Cumberland Hospital’s medical staff. He was in no position to question the corrective measures taken there, and had a right to expect that hospital to take whatever action was necessary to treat him properly (see Barrella v Richmond Mem. Hosp., 88 AD2d 379). The act of referral did not sever the confidential hospital-patient relationship, and Cumberland Hospital has a continuing responsibility. When, as was apparent herein, Cumberland Hospital was unable to provide adequate medical treatment, it was obligated to refer the patient before his condition became irreparable. Under these circumstances, the case at bar is analogous to Borgia v City of New York (12 NY2d 151) where the Court of Appeals noted that it would be absurd to expect a patient to interrupt corrective efforts by filing a notice of claim and commencing a lawsuit. This is also true in a case such as this where there is such a significant nexus between the two hospitals (cf. McDermott v Torre, 56 NY2d 399). Accordingly, we agree with Special Term’s conclusion that the action accrued no later than October 22, 1976, but, in addition, we conclude that the continuous treatment exception enunciated in Borgia (supra) is applicable to the situation at bar.” (Cotto v City of New York, supra, p 749.)
The principle that evolves from the foregoing cases is that if there is a direct referral from one hospital to another under circumstances evincing a continuation of prior treatment and there is some nexus between the two hospitals a question of whether there has been continuous treatment is presented for the trier of fact. What also emerges is that if the patient consults health providers other than the referring institution and such outsiders play a part in the transfer of place of treatment or there are other circumstances which show that there can be no reasonable expectation that treatment is *468 continuing the Statute of Limitations will not be tolled because of the doctrine of continuous treatment (cf. Weinblatt v Lydia Hall Hosp., 105 AD2d 781; Marabello v City of New York, 99 AD2d 133, appeal dismissed 62 NY2d 942).
In examining the facts at bar, it is uncontroverted that Kings County referred Osiris to Downstate, that Kings County could not continue the infant’s treatment because it did not maintain a pediatric neurology outpatient clinic, and that subsequent to the referral Osiris returned to Kings County for a CAT scan at the referral of Downstate. These circumstances are sufficient to create an issue of fact as to whether the Statute of Limitations was tolled as to Kings County based upon the continuous treatment doctrine.
This conclusion is reached with the realization that it is plaintiffs’ burden in seeking to defeat this motion to establish the existence of triable issues of fact concerning continuous treatment (Blythe v City of New York, 119 AD2d 615, supra; Grellet v City of New York, 118 AD2d 141, supra). That burden has been sufficiently met. Kings County had a duty to treat Osiris’ condition. It directly referred him to Downstate after which Downstate sent him back for a test to be done. These factors bespeak a continuing participation by Kings County in the treatment and some nexus between Kings County and Downstate. Accordingly, resolution by the trier of the facts is required.
The motion is denied.

 A motion by plaintiffs to serve a supplemental summons and amended verified complaint was withdrawn.