1997 SD 108

**Linda BRUSKE, Plaintiff and Appellant,**

**v.**

**R.D. HILLE, Defendant and Appellee.**

**No. 19909.**

Supreme Court of South Dakota.

Argued June 3, 1997.

Decided Aug. 20, 1997.

Scott N. Heidepriem, Mark F. Marshall of
Johnson, Heidepriem, Miner, Marlow &

Janklow, Sioux Falls, for plaintiff and appellant.

Michael L. Luce, Mark W. Haigh f Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellee.

KONENKAMP, Justice.

[¶ 1.] A prosthetic implant was surgically inserted in Linda Bruske's right jaw in 1984. Two years later, she sued the doctor for malpractice, then voluntarily dismissed the case. In 1988, the doctor sent warning letters about the implant to his patients, but not to Bruske until 1993. She then sued him for fraud and deceit in failing to earlier disclose the risk. Is her fraud case actually a medical malpractice claim, governed by the two-year statute of limitations, which has expired? We conclude the acts she complains of fall under the definition of medical malpractice, so its limitations period applies. Summary judgment for the doctor is affirmed.

### Facts

[¶ 2.] Linda Bruske suffered from temporomandibular joint (TMJ) disorder. To relieve her symptoms, on May 12, 1984, Dr. R.D. Hille, an oral and maxillofacial surgeon, performed a bilateral internal TMJ operation. Part of the surgery involved placement of a Vitek Proplast II implant into her right jaw. Hille saw her again on July 6, 1984, and for the last time on September 10, 1985. His notes show her postoperative care was "uneventful" and without complications. Between 1984 and 1994, however, she sought treatment with several doctors and dentists and visited the Mayo Clinic in Rochester, Minnesota, mostly concerning persisting difficulties with her jaw.

[¶ 3.] In May 1986, Bruske sued Hille for medical malpractice by service of a summons upon him. No complaint was ever filed, and she voluntarily dismissed the case with prejudice on September 27, 1988. The apparent basis for her suit was explained in a handwritten letter she wrote on December 6, 1987:

In summary, my complaint against Dr. Hille is that he did too much radical surgery on me in too short of a time without doing the proper presurgical diagnosis or explain[ing] the other nonsurgical options available or possible side effects. Ever since he performed the surgery I have had dizzy spells, vision and balance problems, and headaches.

[¶ 4.] Bruske frequented a variety of medical providers, but no one advised her of any specific hazards associated with this implant. However, none were oral and maxillofacial surgeons like Hille. On October 8, 1993, Bruske saw the ABC news television program "20/20," featuring a story on the dangers of Vitek Proplast implants. Then, for the first time she learned of the threat her 1984 implant posed. Made from Teflon, the material used in cookware, these devices tend to shatter once implanted, fragmenting into tiny slivers difficult to remove. Unable to destroy the Teflon splinters, the body's defense mechanisms attack the jaw causing severe damage to tissue and bone.

[¶ 5.] In 1988, Hille began notifying his patients of the problems with the implant and urged them to come in for treatment. Bruske was not among those informed. Hille explained in his deposition that when Bruske sued him in 1986, her file was moved to a fireproof cabinet; therefore, it was not with the other records when patient files were reviewed for implant warnings. Yet the record reveals Hille accessed her file for other matters, including an insurance inquiry in 1990, and a request for surgery records from another doctor in 1991. As time passed, Vitek implants received increased attention. In March 1990, Vitek notified the health care industry about the dangers. The FDA issued a Safety Alert in December 1990 and in January 1991 ordered a total recall. Finally, in November 1993, Bruske received a letter from Hille notifying her of the problems. When the implant was removed in March 1994, it had, in fact, shattered.

[¶ 6.] Bruske's expert, Dr. Anthony M. Captline, D.M.D., J.D., an oral surgeon from

Pennsylvania, testified by deposition that in 1985 the dangers of the implant were known to members of the American Association of Oral and Maxillofacial Surgery (AAOMS), an organization to which Hille belonged. Captline felt that neither dentists nor other physicians Bruske saw would necessarily have been aware of the dangers. These practitioners would not have had the knowledge of the implant hazard that Hille had at his disposal, according to Captline, since 1985, and it was Hille's duty to warn Bruske.

[¶ 7.] Bruske brought suit for fraud and deceit in 1994, asserting Hille suppressed facts he was bound to disclose. Relying on Captline's opinion, Bruske alleged Hille had a duty to advise her of the risks of the Vitek implant long before 1993 and his failure to do so amounted to fraudulent concealment. The circuit court granted Hille's motion for summary judgment. Bruske appeals, contending there were genuine issues of material fact meriting a trial.

### Standard of Review

[¶ 8.] Under our standard for summary judgment review we must decide

whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. *Farmers & Merchants State Bank v. Teveldal*, 524 N.W.2d 874, 877 (S.D.1994)(quoting *Mooney's v. SD Dep't of Transp.*, 482 N.W.2d 43, 45 (S.D.1992)). The evidence must be viewed most favorably to the non-moving party and reasonable doubts should be resolved against the moving party. *Id.* (citation omitted). Our task on appeal is to determine whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of summary judgment is proper. *Id.*

*Henry v. Henry*, 534 N.W.2d 844, 846 (S.D. 1995). Duty is a question of law subject to

de novo review. *Poelstra v. Basin Elec. Power Co-op.*, 1996 SD 36, ¶ 9, 545 N.W.2d 823, 825.

### Fraud and Deceit

[¶ 9.] In her complaint, Bruske alleges two counts of fraud and deceit, based in part, on SDCL ch. 20–10. She asserts Hille failed to inform her of the dangers of the implant sooner.[1] SDCL 20–10–1 provides, "One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." SDCL 20–10–2(3) further defines deceit as "[t]he suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact[.]" While it is true issues of fraud and deceit are generally questions of fact to be determined by a jury, *Laber v. Koch*, 383 N.W.2d 490, 492 (S.D. 1986), summary judgment is appropriate if no evidence of deceitful intent is produced. *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 847 (S.D.1990); *see also Famous Brands, Inc. v. David Sherman Corp.*, 814 F.2d 517 (8th Cir.1987). Unlike contract cases, a tort action for deceit must include actual fraud; constructive fraud is inadequate:

The tort action of deceit is based only upon actual fraud as defined by SDCL 20–10–2, and requires scienter or its equivalent. Constructive fraud, which requires no fraudulent intent, is not a basis for deceit under SDCL 20–10, nor under common law. Although actual fraud may be the basis of tort actions and contract actions, constructive fraud is the basis only for actions for the avoidance of contracts.

*Schmidt v. Wildcat Cave, Inc.*, 261 N.W.2d 114, 117 (S.D.1977) (citations omitted).

[¶ 10.] With fraud and deceit, the six-year statute of limitations applies and would not

---

1. Bruske labels her first count as common law fraud, her second count as deceit, and then in each count describes Hille's "fraudulent concealment" of the dangers of the implant. Fraudulent concealment is not a cause of action, but a mech-

anism to toll a statute of limitations. *See generally* Andrea G. Nadel, Annotation, *Duty of Medical Practitioner to Warn Patient of Subsequently Discovered Danger from Treatment Previously Given*, 12 A.L.R.4th 41 (1982).

begin to run "until the aggrieved party discovers, or has actual or constructive notice of, the facts constituting the fraud." SDCL 15–2–3; SDCL 15–2–13(6); *Anderson v. Production Credit Ass'n*, 482 N.W.2d 642, 644 (S.D.1992). *See generally Toth v. Lenk*, 164 Ind.App. 618, 330 N.E.2d 336 (1975)(statute begins to run if treatment ceases but patient aware of continuing nature of problem). Bruske alleges she discovered Hille's deceit when she viewed the "20/20" program on October 8, 1993, making her February 2, 1994, service of the summons and complaint timely.

[¶ 11.] Bruske must prove Hille acted "with intent to induce [her] to alter [her] position to [her] injury or risk." SDCL 20–10–1. Yet her allegations supporting fraud and deceit lack the usual specificity necessary for such claims. "[A]llegations of fraud and deceit without specific material facts to substantiate them will not prevent summary judgment." *Taggart v. Ford Motor Credit Co.*, 462 N.W.2d 493, 498 (S.D. 1990); *Western Cas. & Sur. Co. v. Gridley*, 362 N.W.2d 100, 102 (S.D.1985). She insinuates Hille intentionally declined to send her a warning letter because of her prior suit against him. Conclusory allegations are insufficient. *Dede v. Rushmore Nat'l Life Ins. Co.*, 470 N.W.2d 256, 258 (S.D.1991); *Home Federal Sav. & Loan v. First Nat'l Bank*, 405 N.W.2d 655, 658 (S.D.1987). *See also Connell v. Colwell*, 214 Conn. 242, 571 A.2d 116, 121 (1990)(summary judgment for doctor affirmed; noting, "[f]raud is not to be presumed, but must be strictly proven") (citation omitted); *Eagleston v. Mt. Sinai Medical Center*, 144 A.D.2d 427, 533 N.Y.S.2d 992, 994 (1988)(dismissal of fraud cause of action against physician affirmed as there was no intentional concealment). Hille's innocent explanation would, of course, negate any wrongful intent. Yet, we are required to view Bruske's case in a light most favorable to her as the nonmoving party, so we probe further.

[¶ 12.] Bruske insists the source of Hille's duty lies not merely in the physician-patient relationship, but upon SDCL 20–10–2(3)("suppression of a fact by one who is bound to disclose it...."). Nonetheless, when closely examined, her claims sound in negligence. Bruske's expert medical witness, Dr. Captline, testified throughout his deposition that Hille breached the standard of care by not notifying her of the danger of the Vitek implant.[2] *See generally Magbuhat v. Kovarik*, 382 N.W.2d 43 (S.D.1986)(discussing the negligence standard for medical malpractice). Hille's failure to timely notify Bruske of the danger of the implants is the gravamen of her cause of action, and therefore it is cognizable under SDCL 15–2–14.1:

> An action against a physician, surgeon, dentist, hospital, sanitarium, registered nurse, licensed practical nurse, chiropractor, or other practitioner of the healing arts for malpractice, error, mistake or failure to cure, whether based upon contract or tort, can be commenced only within two years after the alleged malpractice, error, mistake or failure to cure shall have occurred....

Considering Captline's testimony, it appears Hille's error occurred as early as 1985, the year AAOMS members were informed. In that event, the statute would have run, giving Bruske the broadest leeway, by December 31, 1987. Or, the error resulted in 1988, when Hille warned his other implant patients and omitted Bruske's file in the fireproof cabinet. Again, giving Bruske the most favorable inference on this latest alleged error, the statute would have run by December 31, 1990. In either event, Bruske's 1994 cause of action was untimely.

[¶ 13.] Medical malpractice characterized as fraud and deceit will not sanction a shift to a more beneficial statute of limitations. The Nebraska Supreme Court, in considering such a case, held an affirmative misrepresentation from a doctor to a patient about a cancer risk from x-rays would not take the action out of the two-year malpractice statute of limitations: "[A]ny professional miscon-

---

**2.** For a general discussion of Captline's testimony about Vitek implants in a similar case, *see*

*Allen v. Belinfante*, 217 Ga.App. 754, 458 S.E.2d 867 (1995).

duct or any unreasonable lack of skill or fidelity in the performance of professional or fiduciary duties is 'malpractice' and comes within the professional or malpractice statute of limitations." *Colton v. Dewey,* 212 Neb. 126, 321 N.W.2d 913, 917 (1982). Similarly, in *Schendt v. Dewey,* the court wrote, "Fraudulent representations by a physician as to previous negligence or as to the plaintiff's condition do not convert the cause of action from one of malpractice to one of deceit." 246 Neb. 573, 520 N.W.2d 541, 548 (1994). "Misrepresentations by a physician as to treatment needed or accomplished or as to dangers of treatment or changes in the state of the art as to such medical treatment, whether negligently, deliberately, or fraudulently made, come within the legal purview of malpractice." *Id.* In the words of one Michigan court, "[a] plaintiff may not evade the appropriate limitations period by artful drafting." *MacDonald v. Barbarotto,* 161 Mich. App. 542, 411 N.W.2d 747, 751 (1987)(applying the medical malpractice statute of limitations to claims of fraud and negligence as plaintiff couched cause of action as "failure to exercise a sufficient degree of professional skill"). *See also Turner v. Rust,* 385 S.W.2d 175, 177 (Ky.Ct.App.1964)(applying one-year medical malpractice statute of limitations because no affirmative act of fraud was shown; concealment cannot be assumed); *Burris v. Richards,* 79 Md.App. 554, 558 A.2d 750, 754 (Spec.App.1989)(underlying facts of fraud case sounded in negligence; held to be medical malpractice cause of action); *Krause v. Farber,* 379 N.W.2d 93, 97 (Minn.Ct.App.1985)(misrepresentation and intentional infliction of emotional distress claims against doctor still fall within two-year statute of limitations); *Stacey v. Pantano,* 177 Neb. 694, 131 N.W.2d 163, 165 (1964)(allegations of fraud do not alter a medical malpractice case to one of fraud and deceit); *Rizk v. Cohen,* 73 N.Y.2d 98, 538 N.Y.S.2d 229, 233, 535 N.E.2d 282, 286 (1989)(fraudulent misrepresentation count denied; the same act formed negligence claim). *Cf. Nelson v. Gaunt,* 125 Cal.App.3d 623, 178 Cal. Rptr. 167 (1981)(suit for fraud and medical malpractice permissible where doctor know-

ingly and intentionally represented he could inject silicone into a patient's breasts without a permit, without advising her of risks, and against state and federal regulations); *Skuffeeda v. St. Vincent Hospital,* 77 Or.App. 477, 714 P.2d 235 (1986)(fraud claim against doctor allowed to proceed where doctor reviewed x-rays of a metal screw left in patient's heart and did not disclose it).

[¶ 14.] Viewing this case within the context of medical malpractice, as we must, Bruske's purported "fraud and deceit" action expired under SDCL 15-2-14.1. It remains then to find if an exception will toll the statute.

### Continuing Treatment

[¶ 15.] We examine first the continuing treatment exception:

In the area of medical malpractice ... this court has carved an exception to the statute of limitations. This exception prevents the statute of limitation's clock from ticking when the alleged harm is the result of a continuing tort. *See Wells v. Billars,* 391 N.W.2d 668 (S.D.1986); *Alberts v. Giebink,* 299 N.W.2d 454 (S.D.1980). In *Wells,* the court tolled the statute of limitations for torts arising out of a physician's "continuing treatment" until the doctor-patient relationship ended. *Id.* at 673. The rationale behind this doctrine was to prevent the refusal to seek or administer health care due to pending litigation when treatment may be desperately needed. *Id.,* 391 N.W.2d at 672.

*Bosse v. Quam,* 537 N.W.2d 8, 10 (S.D.1995). For this exception to apply, there must be an "on-going, continuous, developing and dependent relationship." *Schoenrock v. Tappe,* 419 N.W.2d 197, 201 (S.D.1988) (citations omitted); *Sander v. Geib, Elston, Frost Professional Ass'n,* 506 N.W.2d 107, 114 (S.D.1993)(noting the tenets of this doctrine in legal malpractice apply equally to medical malpractice). A continuing relationship is "not sporadic but developing and involves a continuity of the professional services from which the alleged malpractice stems." *Schoenrock,* 419 N.W.2d at 201. The doctrine should only be applied where the "profession-

al's involvement after the alleged malpractice is for the performance of the same or related services and is not merely continuity of a general professional relationship." *Id.* (citations omitted).

[¶ 16.] No doctor-patient relationship continued after Bruske's last appointment with Hille on September 10, 1985, because she never returned to him for treatment. *Walters v. Rinker*, 520 N.E.2d 468, 474 (Ind.Ct.App.1988)(relationship ended with last act of health care); *Colton*, 321 N.W.2d at 917 (physician-patient relationship and duty to warn terminates at end of treatment); *Fleishman v. Richardson–Merrell, Inc.*, 94 N.J.Super. 90, 226 A.2d 843, 845 (App.Div.1967)(doctor owes duty only to one who actually remain under course of treatment); *cf. Ogle v. De Sano*, 107 Idaho 872, 693 P.2d 1074, 1077 (Ct.App.1984)(discovery of foreign body exception not applicable to devices intentionally placed in the body with the patient's knowledge and consent). *See generally* 61 AmJur2d *Physicians, Surgeons, and Other Healers* § 239 (1981)(surgeons are not liable for abandonment if they perform a specific service and then cease treatment). After the 1985 appointment, Bruske was treated by many other health professionals to learn why she continued having problems with her jaw. Simply because she chose not to go specifically to another oral and maxillofacial surgeon will not bind Hille as her provider, especially as she chose instead to visit a range of others in related fields for the same problem. *Compare Jones v. Cloyd*, 534 N.E.2d 257, 258–59 (Ind.Ct.App.1989)(although patient asserted she relied on the root canal done by defendant dentist, even though she treated with others afterward, trial court properly granted summary judgment as defendant's duty to disclose ended after termination of relationship) *and Weaver v. University of Michigan Bd. of Regents*, 201 Mich.App. 239, 506 N.W.2d 264, 267 (1993)(treatment ends when patient goes to another physician).[3] *See also Frias by Frias v. City of New York*, 134 Misc.2d 463, 511 N.Y.S.2d 469, 471 (N.Y.Sup.Ct.1986)(treatment of doctor other than defendant doctor only imputed to defendant if agency relationship or "some other significant continuing nexus" exists); *Echols v. Keeler*, 735 P.2d 730, 732 (Wyo.1987)(finding determinative that plaintiff patient treated with another doctor and defendant doctor was not involved in subsequent treatment).

[¶ 17.] Hille treated Bruske on a limited occasion for a specific purpose—a jaw implant. A continuing relationship "is not sporadic but developing and [involving] a continuity of the professional services." *Schoenrock, supra; Aznel v. Gasso*, 154 Ill. App.3d 785, 107 Ill.Dec. 419, 422, 507 N.E.2d 83, 86 (1987)(occasional or intermittent medical services not continuing treatment); *Nykorchuck v. Henriques*, 78 N.Y.2d 255, 573 N.Y.S.2d 434, 436, 577 N.E.2d 1026, 1028 (1991)(single diagnostic exams given years apart not continuing treatment). *Cf. Reyes v. Anka Research, Ltd.*, 111 Misc.2d 152, 443 N.Y.S.2d 595 (N.Y.Sup.Ct.1981)(gynecologist who inserted an IUD, perhaps even after the FDA had recalled it, had continuing duty to disclose danger of device to patient). Hille's 1993 warning letter will not revive an otherwise concluded medical relationship because after her last appointment with him, Bruske never went back to Hille. The New York Supreme Court highlighted the importance of the patient's role in continuing treatment:

> When a timely return visit *instigated by the patient* is made, the policies underlying the continuous treatment doctrine are implicated and the toll is properly invoked. However, where, as here, plaintiff did not seek corrective treatment and, in fact, allegedly did not know that further treatment was necessary, there is no sound basis for applying the continuous treatment doctrine.... That a degree of continuity exists by virtue of Dr. Cohen's

---

3. *See also Krause v. Farber*, 379 N.W.2d 93, 96 (Minn.Ct.App.1985), noting that treatment does not end if (1) the physician-patient relationship still exists "with regard to the illness;" (2) the physician is "attending and examining the patient;" or (3) there is "something more to be done."

unilateral initiative in October 1983 is unhelpful to plaintiff's position because that contact does not establish the continuing trust *on the plaintiff's part* that the continuous treatment doctrine requires.

*Rizk,* 538 N.Y.S.2d at 232, 535 N.E.2d at 285 (citations and quotations omitted). The court further noted the difficulty in applying the continuous treatment doctrine simply based on doctor-initiated contact:

> Clearly, it is in society's best interest to foster honest communication between physician and patient. Allowing continuous treatment to be invoked solely on a doctor-initiated communication might, we fear, encourage silence. Instead of suggesting new techniques, or pointing out a potential mistake from years earlier, a doctor fearful of a medical malpractice action might simply refrain from contacting a former patient.

*Id. Rice v. Zimmer Mfg. Co.,* 180 Mich.App. 681, 447 N.W.2d 771, 774 (1989)("[M]ere suggestion that a patient return for further care or treatment does not itself constitute treatment or professional service . . . .").

[¶ 18.] Even if the physician-patient relationship continued beyond her last visit to Hille on September 10, 1985, Bruske's 1986 suit for malpractice surely signified its end. In *Juravle v. Ozdagler,* 149 Mich.App. 148, 385 N.W.2d 627 (1985), the court rejected the argument that a relationship continued to exist "when the plaintiff's only purpose was to obtain his records for another doctor and he had previously consulted with various attorneys to bring a malpractice suit." *Id.,* 385 N.W.2d at 630. The relationship concluded when the "accompanying air of truthfulness" ended. *Id.* (citation omitted). *See Morgan v. Taylor,* 434 Mich. 180, 451 N.W.2d 852, 856 n. 15 (1990)(quoting *Juravle, supra,* with approval); *see generally Cantu v. St. Paul Companies,* 401 Mass. 53, 514 N.E.2d 666, 669 (1987)(retaining another attorney ends the trust and confidence of attorney-client relationship and "innocent reliance" on first attorney's advice and counsel). No continuing relationship endured here to toll the statute.

## Fraudulent Concealment

[¶ 19.] Fraudulently concealing a cause of action will also toll the limitations period for medical malpractice. *Hoffman v. Johnson,* 374 N.W.2d 117, 122 (S.D.1985)(citing *Hinkle v. Hargens,* 76 S.D. 520, 81 N.W.2d 888 (1957)); *cf. Oetting v. Mo. Osteopathic Foundation,* 806 S.W.2d 150 (Mo.Ct. App.1991).

> In the absence of some trust or confidential relationship between the parties there must be some affirmative act or conduct on the part of the defendant designed to prevent, and which does prevent, the discovery of the cause of action. Mere silence, in the absence of a duty to speak, is not ordinarily sufficient. Where, however, a trust or other confidential relationship does exist between the parties, silence on the part of one having the duty to disclose, constitutes fraudulent concealment in the absence of any affirmative act.

*Koenig v. Lambert,* 527 N.W.2d 903, 905–06 (S.D.1995)(quoting *Conway v. Conway,* 487 N.W.2d 21, 23 (S.D.1992)), *overruled on other grounds, Stratmeyer v. Stratmeyer,* 1997 SD 97, ¶ 1, 567 N.W.2d 220, 220; *Glad v. Gunderson, Farrar, Aldrich,* 378 N.W.2d 680, 682 (S.D.1985); *Hinkle,* 76 S.D. at 525, 81 N.W.2d at 891. Bruske alleges Hille had a confidential or fiduciary relationship with her, and his silence until 1993 about the dangers of the implant constituted fraudulent concealment. "The relationship of physician and patient has been considered to be one of such confidence." *Hinkle,* 76 S.D. at 525, 81 N.W.2d at 891. To prove this allegation, "[t]he silence must concern defects which the party with the duty to disclose knew or should have known." *Conway,* 487 N.W.2d at 24 (citing *Holy Cross Parish v. Huether,* 308 N.W.2d 575, 577(S.D.1981)). Bruske must show: (1) Hille "fraudulently concealed the cause of action from" her, and (2) she "exercised diligence to discover the cause of action." *Hinkle,* 76 S.D. at 524–25, 81 N.W.2d at 891; *see Smith v. Cook County Hosp.,* 164 Ill.App.3d 857, 115 Ill.Dec. 811, 816, 518 N.E.2d 336, 341 (1987)(no fiduciary relationship exception to the due diligence requirement).

[¶ 20.] Bruske was on notice her right implant failed to correct her condition when her jaw continued to present problems. *Smith*, 115 Ill.Dec. at 817, 518 N.E.2d at 342 (no concealment of the cause of action because patient was in constant pain and aware of injury); *see Joyner v. Forney*, 78 F.3d 1339, 1342 (8th Cir.1996)(visiting a lawyer about medical malpractice action may put patient on inquiry notice). She undeniably treated with a variety of health care professionals on problems with her jaw:

[A] patient who actually consults with an independent health care provider about the same condition which is subsequently the subject matter of an alleged negligent medical continuum knew or in the exercise of reasonable diligence could have known about the prior negligent course of conduct on the date of the consultation with the independent health care provider.

*Ewing v. Beck*, 520 A.2d 653, 664 (Del.1987)(holding patient on inquiry notice about condition and prior medical treatment once treated by independent provider). Not only was Bruske already aware of her jaw problem, but Hille took no affirmative action to prevent Bruske from discovering a cause of action. "The actions of the defendant must be 'directed to the very point of obtaining the delay of which he seeks to take advantage....'" *Connell*, 571 A.2d at 121 (quoting *Lippitt v. Ashley*, 89 Conn. 451, 94 A. 995 (1915)); *Hoemke v. New York Blood Center*, 720 F.Supp. 45, 46 (S.D.N.Y.1989)(act must "induc[e] reliance and forbearance from suit"); *Lasoya v. Sunay*, 193 Ga.App. 814, 389 S.E.2d 339 (1989)(two-year statute of limitations applied to medical malpractice claim; fraudulent concealment did not apply, as defendant did nothing to prevent patient's discovery of negligence); *Sheldon v. Sisters of Mercy Health Corp.*, 102 Mich.App. 91, 300 N.W.2d 746, 748 (1980)(doctor did nothing to hinder plaintiff patient's acquisition of information).

[¶ 21.] Bruske makes no allegation Hille negligently or improperly inserted the implant in 1984. *See Goldsmith v. Howmedica Inc.*, 123 Misc.2d 473, 473 N.Y.S.2d 713, 715 (N.Y.Sup.Ct.1984)("[W]ith respect to implantation of a prosthetic device which later malfunctions, [the statute] runs from the date of implantation."). The act she alleges as fraudulent concealment—failure to warn— is also the gravamen of her deceit claim. This will not establish fraudulent concealment, as the concealment must be a later misrepresentation about a separate and prior act. *Van Overbeke v. Youberg*, 540 N.W.2d 273, 276 (Iowa 1995)(fraudulent concealment in medical malpractice action must "be independent of the alleged acts relied on to establish liability"); *Rizk*, 538 N.Y.S.2d at 233, 535 N.E.2d at 286. Bruske has not made out a case for fraudulent concealment.

[¶ 22.] The medical malpractice statute of limitations bars Bruske's cause of action and no exception tolls the statute. The circuit court properly granted summary judgment.

[¶ 23.] Affirmed.

[¶ 24.] MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.

