#28496-a-SRJ
**2020 S.D. 55**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

FRED SLOTA,                                    Plaintiff and Appellant,

    v.

IMHOFF AND ASSOCIATES, P.C.,
a California Professional Corporation,
HENRY EVANS, SHANNON DORVALL,                  Defendants and Appellees,

    and

MANUEL DE CASTRO, JR.,                         Defendant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RODNEY J. STEELE
Retired Judge

* * * *

JAMES D. LEACH
Rapid City, South Dakota                       Attorney for plaintiff and
                                               appellant.


JASON R. SUTTON
THOMAS J. WELK
MITCHELL W. O'HARA of
Boyce Law Firm, LLP
Sioux Falls, South Dakota                      Attorneys for defendants and
                                               appellees Imhoff & Associates,
                                               Henry Evans and Shannon
                                               Dorvall.

* * * *

ARGUED
OCTOBER 2, 2019
OPINION FILED **09/30/20**

#28496

JENSEN, Justice

[¶1.]		Fred Slota was sentenced to thirty years in the state penitentiary after he was convicted of first-degree rape. Slota's conviction was later vacated when a habeas court determined that Slota's legal representation at trial was constitutionally deficient and prejudicial. Slota sued the law firm of Imhoff and Associates, P.C. (Imhoff) and attorneys Henry Evans, Shannon Dorvall, and Manuel de Castro Jr.[1] (hereinafter jointly referred to as "Attorneys"), alleging legal malpractice, and fraud and deceit related to their representation of Slota on the criminal charges. Imhoff and Attorneys moved for a judgment on the pleadings, arguing that Slota's claims were time-barred by SDCL 15-2-14.2. The circuit court granted the motion, holding that the claims were barred. Slota appeals the dismissal of his claims for fraud and deceit. We affirm.

**Facts and Procedural History**

[¶2.]		On February 13, 2013, Fred Slota was indicted on charges of first-degree rape and sexual contact with a child under the age of sixteen. The alleged victim was a seven-year-old foster child living with Slota and his wife.

[¶3.]		Slota and his wife began a search to retain private counsel to defend Slota on the charges. They located Imhoff, a California law firm. Imhoff's website displayed phrases such as "We have well-versed knowledge regarding laws in each state . . . . You can rest assured in knowing we will do everything in our power to secure the most favorable outcome possible . . . . We provide high-quality legal

---

1.	During the appeal the parties stipulated to a dismissal of the claims against de Castro, and he is no longer a party in this action.

-1-

representation in 48 states . . . . Our firm can vigorously defend your rights, liberties, and reputation against child molestation charges."

[¶4.]        Slota retained Imhoff to defend him. Imhoff hired South Dakota attorneys Evans and de Castro to assist in Slota's defense. Evans had not previously defended a rape case or tried a case to a jury. Imhoff also assigned one of its own associates, Dorvall, to assist with Slota's defense. Slota alleges that Imhoff falsely told him that Dorvall was an expert in defending sex crimes. Evans and Dorvall represented Slota during the rape trial. It was anticipated prior to trial that de Castro would participate in the trial, but he was not present because of a scheduling conflict in an unrelated case. On March 26, 2014, a jury found Slota guilty of sexual contact with a minor and first-degree rape following a three-day trial.[2]

[¶5.]        After the trial, Slota retained new counsel. Slota's new counsel, along with Evans and Dorvall, represented Slota at sentencing on May 30, 2014. Following the sentencing hearing, de Castro and Evans sent Slota letters confirming that neither Attorneys, nor Imhoff, would provide further representation to Slota. Slota's new counsel filed a notice of appeal to this Court on June 23, 2014. This Court affirmed Slota's conviction on March 18, 2015.[3]

---

2.      Slota was only sentenced on the first-degree rape conviction.

3.      The sole issue raised on direct appeal to this Court was whether the circuit court erred in closing the courtroom during the child victim's testimony. *State v. Slota,* 2015 S.D. 15, ¶ 8, 862 N.W.2d 113, 117.

[¶6.]    Slota filed a petition for writ of habeas corpus in September 2015. Among other errors, he alleged Attorneys were ineffective in failing to introduce prior statements the child victim made to two different counselors denying Slota had sexually assaulted her. Slota also claimed that Evans and Dorvall were ineffective in failing to cross-examine witnesses concerning the child's exculpatory statements, and failing to object to the State's closing arguments that the child had consistently claimed that Slota had sexually assaulted her.

[¶7.]    The habeas court held an evidentiary hearing and found that "but for trial counsel's unprofessional errors, the result of the trial would have been different." It issued its ruling more than a year later on June 7, 2017, entering a judgment vacating the convictions and ordering a new trial. The State did not appeal the decision. Slota was remanded from the penitentiary to county jail and eventually released. The State later dismissed the criminal charges against Slota without prejudice. The charges have not been refiled.

[¶8.]    Slota commenced this action in July 2017, more than three years after the attorney-client relationship between Slota and Imhoff and Attorneys had ended. Slota alleged legal malpractice against Imhoff and Attorneys; fraud and deceit against Imhoff, Evans, and Dorvall; and an intentional abandonment claim against de Castro. Slota alleged that Imhoff hired inexperienced counsel for the least amount of money possible and that Attorneys failed to provide competent representation at the criminal trial, which resulted in his conviction.

[¶9.]    Slota also claimed that Imhoff made several false representations to him regarding the firm's capabilities, including that Imhoff specialized in defending

sex crimes; that Imhoff would hire good lawyers who specialized in sex crimes; that Imhoff was able to provide high quality legal representation in 48 states; that Imhoff would see that Slota received quality legal services by specialists in sex crimes; and that Dorvall was an expert in defending sex crimes.

[¶10.]     Additionally, Slota claimed that during the representation, Imhoff and Attorneys made false representations to Slota concerning his criminal defense, including that a polygraph examination would be obtained and that experts would be hired for Slota's defense. Slota further claimed that false representations were made to him concerning the extent of Attorneys' preparation and involvement in the case and the admissibility of prior exculpatory statements made by the victim. He alleged that Attorneys also intentionally suppressed certain information, such as Evans' lack of experience.

[¶11.]     Imhoff and Attorneys moved for judgment on the pleadings pursuant to SDCL 15-6-12(c), arguing the claims were time-barred by the three-year statute of repose for legal malpractice under SDCL 15-2-14.2.[4] Slota resisted, arguing that the claims for fraud and deceit were subject to the six-year statute of limitations for fraud. The circuit court determined that Slota commenced the action more than three years after Attorneys' conduct occurred, and that the fraud and deceit claims

---

4.     SDCL 15-2-14.2 provides:

> An action against a licensed attorney, his agent or employee, for malpractice, error, mistake, or omission, whether based upon contract or tort, can be commenced only within three years after the alleged malpractice, error, mistake, or omission shall have occurred. This section shall be prospective in application.

were merely reassertions of the legal malpractice claims that were barred by the three-year repose period. As such, the court dismissed all the claims. Slota argues on appeal that the circuit court erred in dismissing the fraud and deceit claims.

## Analysis and Decision

[¶12.] "A question of statutory interpretation is a question of law which we review de novo." *Loesch v. City of Huron*, 2006 S.D. 93, ¶ 3, 723 N.W.2d 694, 695. We also review a ruling granting a motion for judgment on the pleadings de novo. *N. American Truck & Trailer, Inc. v. M.C.I. Commc'n Serv's, Inc.*, 2008 S.D. 45, ¶ 6, 751 N.W.2d 710, 712. "Judgment on the pleadings provides an expeditious remedy to test the legal sufficiency, substance, and form of the pleadings." *Loesch*, 2006 S.D. 93, ¶ 3, 723 N.W.2d at 695. "It is only an appropriate remedy to resolve issues of law when there are no disputed facts." *Id.*

[¶13.] Consistent with our recent holding in *Robinson-Podoll v. Harmelink, Fox, & Ravnsborg Law Office*, Slota concedes that SDCL 15-2-14.2 is a statute of repose that bars his legal malpractice claims. 2020 S.D. 5, ¶ 25, 939 N.W.2d 32, 41-42. He argues, however, that under our prior decisions his fraud and deceit claims against Imhoff and Attorneys were timely commenced within the six-year statute of limitations for fraud in SDCL 15-2-13(6). Slota also maintains that his fraud claims arise from the fiduciary duties owed by Imhoff and Attorneys that are not subject to the repose statute in SDCL 15-2-14.2.

[¶14.] Attorneys and Imhoff respond that the fraud and deceit claims relate to the effectiveness of their legal representation and are mere reassertions of the malpractice claims. They claim that SDCL 15-2-14.2 broadly establishes a three-

year repose period for any claims, however denominated, arising out of an attorney-client relationship. Attorneys also argue that a judgment on the pleadings was proper because Slota failed to plead fraud with particularity as required by SDCL 15-6-9(b), and the alleged false misrepresentations are not actionable because they involved opinions about future events, rather than past facts. Because of our disposition on the statute of repose, we need not reach the question of whether the allegations of fraud were sufficient.

[¶15.] This Court has previously discussed the applicability of occurrence-based statutory time periods for professional malpractice actions and other statutes of limitations for a cause of action arises out of a professional relationship.[5] For instance, *Morgan v. Baldwin* considered the applicability of a time period to commence a legal malpractice claim under SDCL 15-2-14.2, and the six-year contract statute of limitations in SDCL 15-2-13(1), in a partnership dispute between plaintiffs and their attorney partner. 450 N.W.2d 783 (S.D. 1990). The plaintiffs and the attorney had entered into a partnership agreement to own and operate a campground. The attorney's role in the partnership was to provide administrative and legal services for the business. When a dispute arose between the parties, plaintiffs sued the attorney, alleging claims for both professional legal malpractice and breach of contract.

[¶16.] In determining the appropriate limitation period, *Morgan* stated that it is the "gravamen of the claim which governs and not the form in which it is

---

5. SDCL 15-2-14.1 to -14.8 contain nearly identical occurrence-based language that establish various time periods to commence an action for malpractice against certain licensed professionals.

pleaded." 450 N.W.2d at 785. *Morgan* also cited the general rule that "if there is any doubt as to which [statute of limitations] applies, such doubt [should] be resolved in favor of the longer limitation period." *Id.* at 786. *Morgan* then applied the longer six-year contract statute of limitations explaining, "the determination to apply the contract limitation . . . is based solely upon the dominant or pervading cause of action (contract) which is inextricably intertwined with the attorney malpractice claim." *Id.* at 787. The Court found that the attorney's duty to the plaintiffs arose mainly from the business relationship between the parties, rather than an attorney-client relationship, reasoning that the partnership agreement created contractual duties as a business partner that included providing legal services. *Id.* at 786.

[¶17.]        In *Bruske v. Hille*, a former patient sued her oral surgeon for fraud and deceit, claiming the surgeon failed to warn her of a defective implant he had placed in her jaw for treatment of TMJ. 1997 S.D. 108, 567 N.W.2d 872. The surgeon moved to dismiss the action under the two-year medical malpractice statute in SDCL 15-2-14.1, while the patient argued that the six-year fraud statute applied to the cause of action. The patient alleged that the surgeon's "duty lies not merely in the physician-patient relationship, but upon SDCL 20-10-2(3) (suppression of a fact by one who is bound to disclose it . . . .)." *Id.* ¶ 12, 567 N.W.2d at 876. We disagreed and stated that "when closely examined, her claims sound in negligence. [The patient's] expert medical witness . . . testified throughout his deposition that [the surgeon] breached the standard of care by not notifying her of the danger of the [] implant." *Id.*

[¶18.]     *Bruske* held that "malpractice characterized as fraud and deceit will not sanction a shift to a more beneficial statute of limitations." *Id.* ¶ 13. *Bruske* cited cases from other jurisdictions providing that "any professional misconduct or any unreasonable lack of skill or fidelity in the performance of professional or fiduciary duties is malpractice and comes within the professional or malpractice statute of limitations." *Id.* "Misrepresentations . . . whether negligently, deliberately, or fraudulently made, come within the legal purview of malpractice." *Id.* "A plaintiff may not evade the appropriate limitations period by artful drafting." *Id.*

[¶19.]     Subsequently, this Court decided *Masloskie v. Century 21 Am. Real Estate, Inc.*, where we again expressed the general rule that when there is doubt as to which statute of limitations applies, doubt should be resolved in favor of the longer limitations period. 2012 S.D. 58, ¶ 12, 818 N.W.2d 798, 802. In *Masloskie*, the plaintiffs purchased a rural lot in the Black Hills to construct a home. The plaintiffs alleged that prior to the purchase, their realtor had falsely represented that he had spoken with the U.S. Forest Service and received permission for plaintiffs to connect the electrical service for their home to a nearby Forest Service electrical power pole. After purchasing the property, plaintiffs discovered the realtor's representations were untrue and incurred substantial expense to connect to an alternative power source. They sued the realtor for fraud and deceit, negligent misrepresentation, breach of fiduciary duty, and breach of contract. The circuit court dismissed all of the claims concluding that they were beyond the three-

year limitation period for malpractice actions involving realtors. *Id.* ¶ 5, 818 N.W.2d at 800. The Masloskies appealed the dismissal of their fraud claim.

[¶20.] Distinguishing *Bruske*, *Masloskie* applied the longer six-year fraud limitation period rather than the shorter three-year period for realtor malpractice actions under SDCL 15-2-14.6.[6] *Id.* ¶ 14, 818 N.W.2d at 803. *Masloskie* declined to follow the other authorities cited by *Bruske* for the proposition that all professional misconduct springing from a professional relationship is malpractice and considered *Bruske's* discussion of this authority to be mere dicta.[7] *Id.* ¶ 10, 818 N.W.2d at 801. The Court further stated:

> South Dakota also recognizes that the same transaction may give rise to two causes of action having different statutes of limitations. Therefore, liability may "co-exist" in different causes of action arising from one transaction. Ultimately, the nature of the cause of action or the right sued upon (and not the form of the action) determines what statute of limitations

---

6. SDCL 15-2-14.6 provides:

   > No action may be brought against a licensed real estate broker, broker associate, or salesperson, or any agent or employee thereof, for malpractice, error, mistake, or omission, whether based upon contract or tort, unless it is commenced within three years of the occurrence of the alleged malpractice, error, mistake, or omission.

7. *Masloskie* cited prior cases where our Court has separately considered claims arising from the same transaction.

   > *See Rehm v. Lenz*, 1996 S.D. 51, ¶ 16, 547 N.W.2d 560, 565 (separately considering allegations of malpractice and fraud in a psychologist/counselor-client relationship); *Richards v. Lenz*, 539 N.W.2d 80, 85 (S.D. 1995) (same); *Morgan v. Baldwin*, 450 N.W.2d 783, 786 (S.D. 1990) (separately considering the "allegations" to determine the "nature" of a complaint alleging both malpractice and breach of contract in an attorney-client relationship). *See also Zoss v. Schaefers*, 1999 S.D. 105, ¶ 11, 598 N.W.2d 550, 553.

   *Masloskie*, 2012 S.D. 58, ¶ 11, 818 N.W.2d at 802.

> applies. When one of two statutes of limitations may be applicable, such application should always be tested by the nature of the allegations in the complaint, and if there is any doubt as to which statute applies, such doubt shall be resolved in favor of the longer limitation period.

*Id.* ¶ 12, 818 N.W.2d at 802.

[¶21.] The above cases were decided before our decisions in *Pitt-Hart v. Sanford USD Medical Center* and *Robinson-Podoll*, where we held that the occurrence-based professional malpractice statutes in SDCL 15-2-14.1 (medical malpractice) and SDCL 15-2-14.2 (legal malpractice) are statutes of repose, not limitation periods. *Pitt-Hart*, 2016 S.D. 33, ¶ 18, 878 N.W.2d 406, 413; *Robinson-Podoll*, 2020 S.D. 5, ¶ 25, 939 N.W.2d at 41. A review of these earlier cases demonstrates that they were premised on an analysis that the professional malpractice time periods were statutes of limitations for particular types of actions, rather than repose periods beyond which a party has a right not to be sued. Thus, in *Morgan*, we recognized that the contract and legal malpractice claims were "inextricably intertwined" and resolved doubt in favor of the "dominant or pervading cause of action (contract)." 450 N.W.2d at 787. Because we found the malpractice claims were "subsumed in the contract claim," we allowed both types of claims to proceed to trial under the longer limitations period. *Id.* at 788. Similarly, in *Masloskie*, we held that "liability may 'co-exist' in different causes of action arising from one transaction" and resolved doubt "in favor of the longer limitation period." 2012 S.D. 58, ¶ 12, 818 N.W.2d at 802.

[¶22.] However, our more recent determination that SDCL 15-2-14.2 is a statute of repose forecloses an analysis that would allow us to resolve doubt in favor

of a longer limitation period as we did in *Morgan* and *Masloskie*. This is because a

statute of repose is substantively different than a statute of limitation.

> Statutes of repose effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time. [They] are based on considerations of the economic best interests of the public as a whole and are substantive grants of immunity based on a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists.

*Pitt-Hart*, 2016 S.D. 33, ¶ 21, 878 N.W.2d at 414. "[A] statute of repose establishes

a right not to be sued, rather than a right to sue. Thus, with the expiration of the

period of repose, the putative cause of action evanesces; life cannot thereafter be

breathed back into it." *Clark Cty. v. Sioux Equip. Corp.*, 2008 S.D. 60, ¶ 27, 753

N.W.2d 406, 416.

[¶23.]    When this principle is applied to the text of SDCL 15-2-14.2, the

Legislature has extinguished any liability and damages that would have existed

against an attorney for "malpractice, error, mistake, or omission, whether based

upon contract or tort" three years after the date of the occurrence.[8] Life cannot be

breathed back into such a claim by repackaging it into a different theory of liability

that may provide a longer limitation period. While *Bruske* seemingly treated the

medical malpractice repose statute in SDCL 15-2-14.1 as a statute of limitations,

the Court properly recognized claims of fraud and deceit arising out of a patient-

---

8.    One of the necessary elements for legal malpractice is that a "client sustained actual injury, loss or damage." *Grand State Prop., Inc. v. Woods, Fuller, Shultz, & Smith, P.C.*, 1996 S.D. 139, ¶ 15, 556 N.W.2d 84, 88. "Proof of damages proximately caused by the attorney's negligence is a fundamental element of both causes of action." *Id.* ¶ 18.

physician relationship; and the ensuing duty of care owed by a physician to a patient must be viewed "within the context of medical malpractice" and the plaintiff's "purported fraud and deceit action expired under SDCL 15-2-14.1." 1997 S.D. 108, ¶ 14, 567 N.W.2d at 877. Thus, to the extent that SDCL 15-2-14.2 is applicable to a cause of action against an attorney arising out of the attorney-client relationship and ensuing professional standards of care, we conclude that no other rule can be applied to extend the time period set out by the Legislature in this repose statute.

[¶24.]     Slota claims that SDCL 15-2-14.2 has no application to his claims for fraud or the intentional failure to disclose facts because the claims arise out of the fiduciary duties owed by Imhoff and Attorneys. Slota's arguments may have some support in the language of SDCL 15-2-14.2, which applies to claims against licensed attorneys for "malpractice, error, mistake, or omission." The statute does not define these terms, nor does it specifically reference breaches of a fiduciary duty or other intentional conduct outside the purview of "malpractice, error, mistake, or omission."

[¶25.]     A legal malpractice claim is premised on the duty of care existing in an attorney-client relationship.[9] *Peterson v. Issenhuth*, 2014 S.D. 1, ¶ 17, 842 N.W.2d 351, 355. This duty requires that the attorney "exercise . . . the skill and knowledge

---

9. To prevail in a legal malpractice claim, a plaintiff must prove: (1) the existence of an attorney-client relationship giving rise to a duty; (2) the attorney, either by an act or failure to act, breached that duty; (3) the attorney's breach of duty proximately caused injury to the client; and (4) the client sustained actual damage.

   *Peterson*, 2014 S.D. 1, ¶ 17, 842 N.W.2d at 355.

ordinarily possessed by an attorney." *Zhi Gang Zhang v. Rasmus*, 2019 S.D. 46, ¶ 28, 932 N.W.2d 153, 162. An attorney's fiduciary duty likewise grows out of the attorney-client relationship but involves a different duty than the standard of care for legal malpractice. "A breach of fiduciary duty in the attorney-client relationship arises from the representation of a client and involves the fundamental aspects of an attorney-client relationship. The fiduciary obligations are twofold: (1) confidentiality; and (2) undivided loyalty." *Behrens v. Wedmore*, 2005 S.D. 79, ¶ 52, 698 N.W.2d 555, 576.

[¶26.]     However, claims for legal malpractice, breach of fiduciary duty, and other torts are often indistinguishable when applying the repose statute as the claims typically involve the same type of conduct and damages.

> Breach of fiduciary duty in the lawyer-client setting is a species of legal malpractice, in that the claim is focused on lawyer misconduct in connection with representing a client. In most situations, the claim for legal malpractice and the claim for breach of fiduciary duty require virtually the same kinds of proof on causation and damages. To succeed on a fiduciary breach claim, the plaintiff must typically prove that the lawyer owed the plaintiff a fiduciary duty, breached it, and that the breach caused damages.

Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* § 724 (2d ed. 2011). Therefore, when the conduct giving rise to a claim for legal malpractice and breach of fiduciary duty and the resulting damages are inseparable, SDCL 15-2-14.2 operates to eliminate the existence of any claim once the repose period has expired. This is consistent with our statement in *Pitt-Hart* that the medical malpractice repose statute is applicable to a claim when there "is a nexus between the injury

suffered by the plaintiff and the health care he received from the hospital." 2016 S.D. 33, ¶ 15, 878 N.W.2d at 412.[10]

[¶27.]    Here, even if we assume that Dorvall and Evans' statements to Slota were false and made intentionally to deceive Slota, these statements fail to generate a separate claim for fraud that has not been extinguished under the repose statute. The statements all relate to and arise directly out of the professional legal services provided by Evans and Dorvall before and during trial, and the professional standards of care owed by Attorneys to Slota. As the circuit court correctly noted, the fraud and deceit allegations "all come back to the effectiveness of the representations [Slota] received." Like *Bruske*, Slota has not alleged that Evans and Dorvall engaged in fraudulent conduct toward him outside the professional duty of care or the scope of the legal services provided to Slota during the course of the representation.

[¶28.]    Further, the damages Slota claims for fraud and deceit are the same losses he claims to have sustained because of the alleged malpractice. This Court requires proof of "injury or damage" as an essential element of fraud. *N. Am. Truck & Trailer, Inc.*, 2008 S.D. 45, ¶ 10, 751 N.W.2d at 714. "[O]ne seeking to recover damages for fraud in a law action must prove that he has suffered a loss directly from, and as a clear and necessary consequence of, the fraud." *Schmidt v. Wildcat Cave, Inc.*, 261 N.W.2d 114, 118 (S.D. 1977). Specifically, Slota claims damages for

---

10.    SDCL 15-2-14.2 may not apply to every claim by a client against an attorney that involves a breach of fiduciary duty, fraud, or other intentional conduct when such conduct causes harm unrelated to the malpractice. However, we need not explore the limits of SDCL 15-2-14.2 to resolve the case that is before us.

losses he sustained because of the "incompetent legal services" resulting in his wrongful conviction. Those alleged damages were caused by Attorneys' malpractice for which liability no longer exists under SDCL 15-2-14.2. After the repose period expired, "life cannot thereafter be breathed back into" the malpractice claim. *See Clark Cty.*, 2008 S.D. 60, ¶ 27, 753 N.W.2d at 416. Slota has not alleged that he sustained any other damages caused by the alleged fraud. Thus, Slota has no independent cause of action for fraud that has not been extinguished by the repose statute.[11]

[¶29.]     Slota's fraud and deceit claims against Imhoff differ only slightly from his claims against Attorneys. Slota alleges that Imhoff knowingly misrepresented or suppressed facts about the legal ability, experience, and expertise of the attorneys who would be defending him. The complaint alleges that these misrepresentations were made by Imhoff both on its website and verbally. It is unclear whether Imhoff's representations were made before or after an attorney-client relationship began between Imhoff and Slota.[12] Nonetheless, like the fraud

---

11.     Slota alleges a claim for punitive damages. However, we have recognized that "[t]here is no independent cause of action for punitive damages." *O'Neill v. O'Neill*, 2016 S.D. 15, ¶ 25, 876 N.W.2d 486, 496. Further, "We have consistently held that punitive damages are not allowed absent an award for compensatory damages." *Hoaas v. Griffiths*, 2006 S.D. 27, ¶ 18, 714 N.W.2d 61, 67.

12.     An attorney-client relationship begins "when: (1) a person seeks advice or assistance from an attorney; (2) the advice or assistance sought pertains to matters within the attorney's professional competence; and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance." *Keegan v. First Bank of Sioux Falls*, 519 N.W.2d 607, 611 (S.D. 1994). "Whether an attorney-client relationship existed is ordinarily a

(continued . . .)

and deceit claims against Evans and Dorvall, Slota's fraud claims against Imhoff cannot be untethered from the malpractice claims.

[¶30.]     To recover for fraud and deceit against Imhoff, Slota would need to prove that he relied upon Imhoff's false assurances that the firm would provide experienced and competent counsel to represent him along with independent experts to assist in his defense. Further, that as a result of Imhoff's failure to provide such representation, Slota was wrongfully convicted and incurred damages. *See* SDCL 20-10-1, -2. *See also Stabler v. First State Bank of Roscoe*, 2015 S.D. 44, ¶ 19, 865 N.W.2d 466, 477 (To recover for fraud or deceit, a party must prove that he "did in fact rely on [an intentionally false statement or suggestion of fact] and was induced thereby to act to his injury or damage."). Even if Imhoff intentionally misrepresented or omitted facts about the quality of the representation that would be provided, Slota cannot separately prove a claim for fraud against Imhoff without relying on the evidence necessary to support both the liability and damages claimed for legal malpractice. Because Slota's fraud claim is subsumed within his malpractice claim, both are precluded under the repose statute.

[¶31.]     We affirm the circuit court's order.

[¶32.]     GILBERTSON, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.

---

(. . . continued)
     question of fact." *Chem-Age Indus., Inc. v. Glover*, 2002 S.D. 122, ¶ 24, 652 N.W.2d 756, 767.