**BUGGSI, INC., Plaintiff,**

v.

**CHEVRON U.S.A., INC., a Pennsylvania corporation, D.B. Anderson, Inc., an Oregon corporation, Defendants.**

**Civ. No. 92–1379–FR.**

United States District Court, D. Oregon.

July 19, 1994.

Karl G. Anuta, Jolles, Sokol & Bernstein, P.C., Portland, OR, J. Marshall Gilmore, Salem, OR, for plaintiff.

Bruno J. Jagelski, Carl Burnham, Jr., Yturri, Rose, Burnham, Bentz & Helfrich, Ontario, OR, and William D. Okrent, G.

Marts Acker, Acker & Okrent, Portland, OR, for defendant D.B. Anderson, Inc.

## OPINION

FRYE, District Judge:

The matter before the court is the motion of the defendant, D.B. Anderson, Inc., for summary judgment (# 45).

## UNDISPUTED FACTS

Since the 1920's, the Petroleum Bulk Storage and Distribution Plant (the Bulk Plant) in La Grande, Oregon has been used to store and dispense gasoline and diesel fuel. At a prior time, underground storage tanks were used to store the fuel; however, all of these underground storage tanks have been removed from the site. Gasoline and diesel fuel are also stored and dispensed on properties adjacent to the Bulk Plant, such as service stations, and, until 1991, a lumber facility.

In April of 1980, D.B. Anderson, Inc. (D.B. Anderson) purchased the Bulk Plant from Chevron, U.S.A., Inc. (Chevron). In the late 1970's and early 1980's, groundwater contamination caused by petroleum was discovered in an area southeast of the Bulk Plant. The Department of Environmental Quality of the State of Oregon (the DEQ) concluded in 1981 that the major source of the contamination was the Bulk Plant.

Groundwater contamination caused by petroleum has been a problem beneath the property of the plaintiff, Buggsi, Inc. (Buggsi), since 1983. The flow of the groundwater in the area of Buggsi's property is generally east/southeast along the former stream channel deposits.

As a result of the groundwater contamination, and with the agreement of the DEQ, Chevron performed remediation in the vicinity of the Bulk Plant. This clean-up operation ended in 1982 with the approval of the DEQ. Chevron has continued to monitor the site for groundwater contamination.

In September of 1988, Buggsi purchased property about 400 feet east/southeast from the land containing the Bulk Plant and ap-proximately 1,000 feet from the Bulk Plant itself.

Buggsi built a motel on one part of its property, and, in 1990, Buggsi contracted to sell another part of its property to Pizza Hut. Buggsi intended to use the profits from the sale of the property to Pizza Hut to expand the motel that occupies the remainder of the property. Pizza Hut and Buggsi obtained environmental assessments (EA's) of the property in 1991, which revealed that the groundwater under the property was contaminated by petroleum products. The sale to Pizza Hut was not completed.

In April of 1993, a vapor extraction system was installed in the vicinity of the Bulk Plant by the Pacific Environmental Group at the behest of Chevron. On March 14, 1994, no benzene was found in the groundwater beneath Buggsi's property.

On March 18, 1993, Buggsi gave notice of its intent to file suit against D.B. Anderson under the notice provisions of the CERCLA, 42 U.S.C. § 9659(a)(1), and the RCRA, 42 U.S.C. § 6972(b)(2)(A).

On April 22, 1993, Buggsi filed a complaint against Chevron and D.B. Anderson. On August 12, 1993, Buggsi filed a second amended complaint alleging five claims: (1) trespass; (2) nuisance; (3)(a) common law negligence; (3)(b) negligence per se; (4) citizen suit under the RCRA; and (5) strict liability under the Oregon Superfund.

## APPLICABLE STANDARD

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden to establish the absence of a material issue of fact for trial is on the moving party. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*,

477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden shifts to the nonmoving party to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

Assuming there has been adequate time for discovery, summary judgment should then be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of N. Am.,* 638 F.2d 136, 140 (9th Cir.1981). Finally, summary judgment is inappropriate where credibility is at issue. Credibility issues are appropriately resolved only after an evidentiary hearing or full trial. *SEC v. Koracorp Indus.,* 575 F.2d 692, 699 (9th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978).

## CONTENTIONS OF D.B. ANDERSON

D.B. Anderson contends that this court should summarily grant judgment in its favor on the following grounds: (1) Buggsi did not comply with the mandatory notice provisions of the RCRA, 42 U.S.C. § 6972; (2) there is no evidence of an imminent and substantial endangerment as required by the RCRA; (3) the Bulk Plant is not an ultrahazardous activity which can support common law claims for trespass and nuisance; and (4) the common law claims are barred by O.R.S. 12.115.

D.B. Anderson also contends that Buggsi has not produced any evidence of a causal connection between the operations of D.B. Anderson and the alleged contamination on Buggsi's property which connection is required in order to support Buggsi's common law claims of trespass, nuisance and negligence.

## ANALYSIS AND RULING

1. *The Notice Requirement of the RCRA, 42 U.S.C. § 6972(b)(2)(A)*

■ D.B. Anderson argues that this court has no jurisdiction to proceed because the complaint was not timely filed. D.B. Anderson relies on 42 U.S.C. § 6972(b)(2)(A), which provides:

No action may be commenced under subsection (a)(1)(B) of this section prior to ninety days after the plaintiff has given notice of the endangerment to—

(i) the Administrator;

(ii) the State in which the alleged endangerment may occur;

(iii) any person alleged to have contributed or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in subsection (a)(1)(B) of this section,

except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of subchapter III of this chapter.

Buggsi concedes that this action was commenced prior to the expiration of the ninety-day notice period but argues that the amended complaints, which were filed after the ninety-day notice period had expired, satisfy the notice requirement of the RCRA. Buggsi explains that when an amended complaint alleging a claim under 42 U.S.C. § 6972(a)(1)(B) is filed after the ninety-day notice period has expired, the amended complaint effectively cures or renders moot any defects in notice or timing in the filing of the complaint.

The court looks to the second amended complaint to decide whether the second amended complaint complies with the notice and delay provisions of the RCRA. *See, e.g., Zands v. Nelson,* 779 F.Supp. 1254, 1258 (S.D.Cal.1991). Because the second amended complaint containing the RCRA claim was filed more than ninety days after notice was given to D.B. Anderson, jurisdiction in this court is proper.

### 2. Imminent and Substantial Endangerment to the Environment

■ D.B. Anderson contends that "there is no evidence that D.B. Anderson's operations have contributed to contamination on the Plaintiff's property and because the level of contamination on Plaintiff's property has declined since Chevron's remediation in 1981–1982, the ongoing operation of D.B. Anderson's facility cannot constitute the endangerment alleged." Defendant D.B. Anderson's Memorandum of Law in Support of its Motion for Summary Judgment, p. 8.

Buggsi contends that there is ample evidence that D.B. Anderson's operations have caused an imminent and substantial endangerment to the environment. Les Tipton, a senior engineer with Cascade Earth Sciences, Inc., testified that tests that his firm has performed have indicated that volatile vapors, possibly from petroleum contamination, are present in the soils surrounding Buggsi's property. *See* Deposition of Les Tipton, pp. 37–38 (Exhibit 8 to Plaintiff's Memorandum in Opposition, pp. 3–4).

In its cover letter dated December 3, 1993 concerning a Preliminary Assessment, the DEQ "determined that further action is required at this site to address releases of hazardous substances that threaten public health or the environment. Specifically, soil and groundwater remediation, and an investigation of ongoing releases at the site." Exhibit 9 to Plaintiff's Memorandum in Opposition, p. 1.

In the Preliminary Assessment, the DEQ states as follows, in relevant part:

[T]he lack of aggressive remedial activities at the site for the past twelve years has done little to remedy the problems associated to the site.... [T]he unremediated recent releases identified during the site visit conducted during this [Preliminary Assessment] may be adding to the pre-existing problems and jeopardizing the effectiveness of the vapor extraction system. The [Preliminary Assessment] has verified that the groundwater pathway has been affected.... Also, an aggressive groundwater remediation program should be developed at the site to more quickly reduce contamination associated with the site to levels protective to human health and the environment.

Exhibit 4 to Plaintiff's Memorandum in Opposition, p. 20.

■ Under the RCRA, Buggsi may bring an action "against any person ... who has contributed or who is contributing to the past or present ... disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B).

"Endangerment," as used in federal statutes such as the RCRA, does not refer to actual harm but to a "threatened or potential harm." "While the risk of harm must be 'imminent' ... the harm itself need not be." *Unites States v. Conservation Chem. Co.,* 619 F.Supp. 162, 193 (D.C.Mo.1985) (quoting House Report to the Safe Water Drinking Act, H.Rep. No. 1185, 93rd Cong. 2d Sess. 35–36, *reprinted in* 1974 U.S.Code & Con.Ad. News 6454, 6487–88).

[I]f an error is to be made in applying the endangerment standard, the error must be made in favor of protecting public health, welfare and the environment. Thus, ... the word "imminent" does not require proof that harm will occur tomorrow, ... the word "endangerment" does not require quantitative proof of actual harm, [and] the word "substantial" does not require quantification of the endangerment (e.g., proof that a certain number of persons will be exposed, that "excess deaths" will occur, or that a water supply will be contaminated to a specific degree).

*Conservation Chem. Co.,* 619 F.Supp. at 194.

By presenting the expert testimony of Les Tipton and the DEQ as evidence that an "imminent and substantial endangerment to the environment" exists, Buggsi has made a showing sufficient to create an issue of fact as to this element. The court finds that summary judgment in favor of D.B. Anderson is not appropriate on this issue.

### 3. Ultrahazardous Activity for Which Strict Liability may be Imposed

■ D.B. Anderson argues that the Bulk Plant operation is not an ultrahazardous ac-

tivity for which strict liability under the common law may be imposed. D.B. Anderson relies on *Hudson v. Peavey Oil Co.,* 279 Or. 3, 566 P.2d 175 (1977), in which the court held that an activity is ultrahazardous only where it is "extraordinary, exceptional, or unusual, considering the locality in which it is carried on; when there is a risk of grave harm from such abnormality; and when the risk cannot be eliminated by the exercise of reasonable care...." *Id.* at 8, 566 P.2d 175 (quoting *McLane v. Northwest Natural Gas,* 255 Or. 324, 328–29, 467 P.2d 635 (1970)).

In *Hudson,* the plaintiff filed a trespass claim because of leaking underground storage tanks. The court held that the storage of gasoline was not "extraordinary, exceptional, or unusual," and "[m]oreover, we cannot hold, on the evidence presented, that the risk of seepage cannot be eliminated by the exercise of reasonable care, or that the harm to be anticipated from the underground seepage of gasoline is 'grave'...." *Id.* at 8, 566 P.2d 175.

D.B. Anderson argues that the Bulk Plant operation is not extraordinary, exceptional or unusual, and that the risk of seepage from tanks located above the ground, such as those at the Bulk Plant, is less than the risk from the underground storage tanks at issue in *Hudson.*

In 1982, the Oregon Supreme Court modified the test relied on in *Hudson* for determining whether an activity is "ultrahazardous": "[The potential for abnormal hazards may] differ with the place where the activity is conducted; but an activity is not otherwise immune from strict liability because it is 'appropriate' in its place.... [A]n extraordinary risk does not become ordinary because it occurs in its own appropriate place." *Koos v. Roth,* 293 Or. 670, 682, 652 P.2d 1255 (1982).

In *Koos,* the court provided additional criteria for determining when an activity is "ultrahazardous" for purposes of strict liability: "[T]he abnormally dangerous nature of an activity need not be proved by evidence if this danger is recognized by stringent legislative or administrative safety regulations, although it may be an issue what degree of danger a regulation recognizes." *Id.* at 682,

652 P.2d 1255. "Whether the danger is so great as to give rise to strict liability depends both on the probability and on the magnitude of the threatened harm. If the consequences of a mishap are potentially lethal or highly destructive of health or property, a slight likelihood that they will occur suffices...." *Id.* at 678, 652 P.2d 1255.

Under the laws of the State of Oregon, an activity is not free from being held strictly liable because it is appropriate in its place; the abnormally dangerous nature of the activity can be proved by a showing that the activity is governed by stringent legislative or administrative safety regulations and by proof that there is a slight likelihood of a mishap that could potentially be highly destructive of health or property.

Statutes such as O.R.S. 468B.025 (no pollutants in state waters), O.R.S. 465.205 *et seq.* (hazardous waste cleanup), and O.R.S. 466.-605 *et seq.* (hazardous waste storage and disposal and leaking underground storage tanks) indicate a stringent legislative safety scheme for an activity such as the Bulk Plant operation.

O.R.S. 465.200(9)(c) states that a "Hazardous substance" means "Oil." O.R.S. 465.-200(11) states, in part: " 'Oil' includes gasoline, crude oil, fuel oil, diesel oil, lubricating oil, oil sludge or refuse and any other petroleum-related product, or waste...."

O.R.S. 465.255 imposes strict liability for the costs of remedial action incurred by the State of Oregon or any other person that are attributable to or associated with a facility for hazardous substances and for damages for injury to or destruction of any natural resources caused by a release of hazardous substances. " 'Facility' means any building, structure, installation, equipment ... storage container, above ground tank ... or any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located and where a release has occurred or where there is a threat of a release...." O.R.S. 465.-200(6).

The court cannot find, as a matter of law, that the Bulk Plant operation is not an "ul-

trahazardous" activity because the Bulk Plant is a facility that deals with a "hazardous substance" that could potentially be highly destructive of health or property in the event of a mishap.

### 4. *The Statute of Ultimate Repose*

■ O.R.S. 12.115(1) provides as follows: "In no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of."

D.B. Anderson contends that any act or omission causing contamination which occurred prior to March 23, 1983 (ten years prior to its being served with this complaint) is barred by O.R.S. 12.115(1).

Buggsi argues that O.R.S. 12.115(1) is preempted by the Superfund Amendments and Reauthorization Act (SARA), 42 U.S.C. § 9658, which states as follows, in relevant part:

> (a)(1) In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.
>
> . . . .
>
> (b)(4)(A) [T]he term "federally required commencement date" means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of this section were caused or contributed to by the hazardous substance or pollutant or contaminant concerned.

Buggsi contends that it did not know that the groundwater beneath the property was contaminated by hazardous materials until 1991, and therefore the commencement date

for the Statute of Repose is not more than ten years prior to the filing of this action.

D.B. Anderson argues that the SARA is not applicable because the definition of "hazardous waste" in 42 U.S.C. § 9601 expressly excludes petroleum, and the Bulk Plant is not a "facility" as required by section 9658(a)(1). Under 42 U.S.C. § 9601, "[t]he term 'hazardous substance' . . . does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph . . . ." 42 U.S.C. § 9601(14).

However, the terms "pollutant" and "contaminant" are not defined in section 9601 to exclude petroleum. Section 9658 preempts any state statute of limitations for "pollutants" and "contaminants" as well as for "hazardous substances."

> The term "facility" means (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.

42 U.S.C. § 9601(9).

■ D.B. Anderson contends that the Bulk Plant is not a "facility" because of the use of the term "hazardous substance" in section (B) which does not include petroleum products. However, section (A) does include the Bulk Plant as a "facility." A "facility" under section (A) is "[a]ny building, structure, installation, equipment . . . or . . . storage container."

The court finds that O.R.S. 12.115 is preempted by U.S.C. § 9658 because the Bulk Plant is a "facility," and the alleged damages in this action involve "pollutants" or "contaminants."

There is no evidence in the record at this time that Buggsi knew or reasonably should have known of the property damage caused or contributed to by a hazardous substance,

pollutant or contaminant more than ten years prior to the filing of this lawsuit. Therefore, the motion of D.B. Anderson for summary judgment is denied on the issue of the Statute of Ultimate Repose.

## CONCLUSION

For the reasons stated above, the motion of D.B. Anderson for summary judgment (# 45) is denied as to all claims.