#24462-a-SLZ

**2008 SD 60**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

CLARK COUNTY, a political
subdivision of the State of South
Dakota,
     and
STATE OF SOUTH DAKOTA
PETROLEUM RELEASE
COMPENSATION FUND,               Plaintiffs and Appellants,

     v.

SIOUX EQUIPMENT CORPORATION,     Defendant, Third Party
a South Dakota corporation,              Plaintiff and Appellee,

     v.

EATON CORPORATION and           Third Party Defendants
SNAP-TITE, INC.,                 and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CLARK COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE ROBERT L. TIMM
Judge

\* \* \* \*

ARGUED ON FEBRUARY 12, 2008

OPINION FILED **07/02/08**

\* \* \* \*

JUDITH K. GRUNEWALDT of
Judith K. Grunewaldt Law, Prof. LLC
Pierre, South Dakota

Attorney for plaintiff and
appellant SD Petroleum
Release Comp.

NAOMI R. CROMWELL
RICHARD TIESZEN of
Tieszen Law Office, Prof. LLC
Pierre, South Dakota

Attorneys for plaintiff and
appellant Clark County.

ARTHUR M. HOPPER of
Austin, Hinderaker, Hackett,
 Hopper, Strait & Bratland
Watertown, South Dakota

Attorneys for defendant,
third party plaintiff and
appellee Sioux Equipment.

ROBERT B. ANDERSON of
May, Adam, Gerdes & Thompson, LLP
Pierre, South Dakota

Attorneys for third party
defendant and appellee
Eaton Corporation.

RONALD A. PARSONS, JR., of
Johnson, Heidepriem, Janklow,
 Abdallah & Johnson, LLP
Sioux Falls, South Dakota

Attorneys for third party
defendant and appellee
Snap-Tite, Inc.

#24462

ZINTER, Justice

[¶1.]		Sioux Equipment installed a fuel storage and dispensing system on real property owned by Clark County (County).  County and the State of South Dakota Petroleum Release Compensation Fund (PRCF) sued Sioux Equipment when the system leaked and released diesel fuel into the environment.  Sioux Equipment moved for summary judgment on the ground that a ten-year statute of repose barred County's and PRCF's claims.  The circuit court granted Sioux Equipment's motion, concluding that Sioux Equipment's work was "an improvement" to real property within the meaning of the statute of repose.  The circuit court also concluded that the federal Comprehensive Environmental Response Compensation and Liability Act ("CERCLA") preempted state statutes of limitations, but not the statute of repose.  We affirm.

I

[¶2.]		Sioux Equipment is in the business of installing petroleum storage and distribution equipment, including above-ground fuel storage tanks.  County is a political subdivision of the State of South Dakota.  County owns real property used as a highway shop.  PRCF is a state agency that reimburses petroleum tank owners for certain costs of remediating the release of petroleum and petroleum-containing products into the environment.

[¶3.]		In November 1991, County contracted with Sioux Equipment to install the fuel storage and dispensing system, which included three 10,000 gallon above-ground fuel tanks, piping, and related equipment for the County's highway department.  The scope of the work was described in Sioux Equipment's permit

-1-

application, which was submitted to the South Dakota Department of Environment and Natural Resources (DENR). The application described the work as follows:

SCOPE OF WORK

Existing Tanks and pump to be Removed and Disposed of under Separate Contract. . . . Tanks shall consistent of 3 – 10,000 gal 11' X 15' New Single Wall Steel Aboveground tanks, 2 tanks shall store Class #2, Diesel Fuel, the other shall store Class #1, Gasoline. . . . Estimated cost of this project (Excluding Excavation) is $15,000.

(Emphasis in original). When Sioux Equipment arrived to begin its work, the site had already been excavated. There is no dispute that Sioux Equipment did not perform the excavation, and that a pre-existing fuel system was removed before Sioux Equipment arrived.

[¶4.] Sioux Equipment's installation was substantially completed by January 7, 1992, with Sioux Equipment's submission of a Certificate of Compliance to DENR. Sioux Equipment did no further work at the site[1] until it was notified of a 4,000 gallon fuel leak in February of 2003. As a result of this leak, County and PRCF incurred significant remediation expenses. PRCF asserts that the County and PRCF will incur additional expenses in the future.

[¶5.] In February of 2006, County and PRCF sued Sioux Equipment for negligence, breach of implied and express warranties, and breach of implied warranty of fitness for a particular purpose. County sought $139,985.34 in

---

1. There was an occasion when the Clark Highway Department called Sioux Equipment to the site in May of 1997, complaining that a dispensing pump was not running properly. Sioux Equipment inspected the pump and determined that the storage tank was low of fuel and the pump would run properly when the tank was filled. This visit is not relevant in this litigation.

damages and prejudgment interest. PRCF sought $182,113.64 in damages for remediation costs, attorney fees and prejudgment interest.

[¶6.] Sioux Equipment moved for summary judgment, asserting the affirmative defense that a ten-year statute of repose had expired.[2] County and PRCF responded arguing that the statute of repose issue involved a question of fact for the jury; i.e., whether Sioux Equipment's work was "an improvement" to real property within the meaning of the statute. County and PRCF alternatively argued that if the statute of repose applied, it was preempted by CERCLA –a federal statute imposing liability for releasing hazardous materials into the environment.

[¶7.] The circuit court concluded that Sioux Equipment's work was an improvement to property, and therefore, the claim was barred by the statute of repose. Following the most recent authority from federal court interpretations of CERCLA, the circuit court also concluded that CERCLA preempted state statutes of limitations, but not statutes of repose. County and PRCF appeal both conclusions.

II

[¶8.] "In reviewing a grant or denial of summary judgment . . . we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and [established] entitlement to judgment on the merits as a matter of law." Behrens v. Wedmore, 2005 SD 79, ¶18, 698 NW2d 555, 565. "'[T]hose resisting summary judgment [must] show that they will be able to place

---

2. Sioux Equipment also brought third-party claims against manufacturers Eaton Corporation and Snap-Tite for breach of warranty, product liability, and indemnity. Both third-party defendants cross-claimed each other.

sufficient evidence in the record at trial to support findings on all the elements on which they have the burden of proof.'" Bordeaux v. Shannon County Sch., 2005 SD 117, ¶14, 707 NW2d 123, 127 (quoting Chem-Age Indus., Inc. v. Glover, 2002 SD 122, ¶18, 652 NW2d 756, 765 (citation omitted)); *see also* Celotex Corp. v. Catrett, 477 US 317, 322-23, 106 SCt 2548, 2552, 91 LEd2d 265, 273 (1986) (stating that entry of summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which party will bear the burden of proof at trial). Mere general allegations and denials that do not set forth specific facts will not prevent issuance of summary judgment. Casazza v. State, 2000 SD 120, ¶16, 616 NW2d 872, 876.

III

[¶9.]     SDCL 15-2A-3 is the applicable statute of repose. It provides a ten-year period after substantial completion of a project to bring an action for "an improvement" to real property:

> No action to recover damages for any injury to real . . . property . . . arising out of any . . . construction, of an improvement to real property . . . may be brought against any person performing or furnishing the design, planning, supervision, inspection, and observation of construction, or construction, of such an improvement more than ten years after substantial completion of such construction. The date of substantial completion shall be determined by the date when construction is sufficiently completed[.]

SDCL 15-2A-3.

[¶10.]     County and PRCF argue that Sioux Equipment's installation was a mere replacement of the prior underground storage tanks, and therefore, it could not have been an improvement to real property within the meaning of the statute.

This argument requires us to first determine the meaning of "an improvement" to real property, a question of law we review de novo. We must then apply that definition to determine whether Sioux Equipment's work involved an improvement to real property. This second determination is a mixed question of law and fact because the historical facts are established, the rule of law will be established by the court, and the dispositive issue is "whether . . . the rule of law as applied to the established facts is or is not [favorably satisfied]." *In re* Dorsey and Whitney Trust Co., LLC, 2001 SD 35, ¶6, 623 NW2d 468, 471 (citations omitted). Because the application of a legal test to the historical facts of this case requires us to consider legal concepts and "exercise judgment about the values that animate legal principles," we review the second determination de novo. *Id.*[3]

[¶11.] Although this Court has not defined an "improvement to real property" in the context of SDCL 15-2A-3, most courts considering the issue have adopted what has been described as a "common sense approach." In *Jarnagin v. Fisher Controls Int'l, Inc.*, 573 NW2d 34 (Iowa 1997), the Iowa Supreme Court

---

3.      In such cases involving mixed questions of law and fact:

> Where the analysis turns on the fact finder's "'experience with the mainsprings of human conduct,'" it is essentially a factual question to which we apply the clearly erroneous standard. If, however, "the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles . . . ," we apply the de novo standard.

*In re Dorsey*, 2001 SD 35, ¶6, 623 NW2d at 471 (citations omitted).

affirmed summary judgment in favor of manufacturers of LP gas regulators, concluding that the regulators, which were used in a home heating system, were an improvement to real property.  The *Jarnagin* court adopted the following definition

> A permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.

*Id*. at 36.

[¶12.]	In *State Farm Fire and Cas. v. Aquila Inc.*, the Minnesota Supreme Court adopted the same definition, concluding that an underground natural gas pipeline system constituted an improvement to real property.  718 NW2d 879, 884 (Minn 2006).  Similarly, the Supreme Court of Wisconsin applied that definition in a case questioning whether an underground oil pipeline was an improvement to real estate within the meaning of the Wisconsin statute of repose.  United States Fire Ins. Co. v. E.D. Wesley Co., 105 Wis2d 305, 313 NW2d 833, 835 (1982).  Notably, that case also involved a petroleum storage facility.  The court held that, "as a matter of law, [ ] when the pipeline was connected to the equipment located on the . . . real property, that pipeline became an improvement to the . . . property." *Id*.  The New Mexico Supreme Court adopted essentially the same definition as the Iowa, Minnesota, and Wisconsin Supreme courts.  Delgadillo v. City of Socorro, 104 NM 476, 723 P2d 245 (1986).  In *Delgadillo*, the court defined an improvement as "the enhancement or augmentation of value or quality:  a permanent addition to or betterment of real property that enhances its capital value and that involves the

expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs."[4]  *Id.* at 478, 723 P2d at 247.

[¶13.]      In this case, the circuit court cited some but not all of these factors, ultimately concluding that under the undisputed facts, Sioux Equipment's work was an improvement within the meaning of SDCL 15-2A-3.  The circuit court reasoned:

> In this case the [County] contracted with [Sioux Equipment] to undertake a substantial project for $15,000.  There is no evidence presented that the work performed by [Sioux Equipment] in any way was in the capacity of replacing an existing unit.  It is also clear that the system amounted to an improvement of [County]'s existing property.  Therefore, it is apparent that in the present case the work completed by [Sioux Equipment] constituted an improvement to [County's] property as contemplated by SDCL 15-2A-3.

[¶14.]      We essentially agree.  When Sioux Equipment arrived at the site, no fuel dispensing system existed.  According to the scope of the work document, whatever system had been previously on site had been removed under a separate contract.  The addition of the Sioux Equipment fuel system, for which County paid $15,000, clearly enhanced the use of the property.  County and PRCF concede that

---

4.      In *Van Den Hul v. Baltic Farmers Elev. Co.*, 716 F2d 504 (8thCir 1983), the Eighth Circuit Court of Appeals determined that installation of an underground pipe to carry LP gas from a tank on one side of the street to a grain dryer on the other side of the street was an improvement to real property under the predecessor to SDCL 15-2A-3 (SDCL 15-2-9) (repealed 1985).  In reaching its conclusion, the *Van Den Hul* court predicted that South Dakota courts would adopt a common sense definition of the word "improvement."  *Id.* at 508.  It applied an essentially identical definition as that adopted by the Iowa, Minnesota, Wisconsin and New Mexico Supreme Courts, examining: "whether the modification or addition enhances the use of the property, involves the expenditure of labor or money, is more than

(continued . . .)

the addition involved the expenditure of money and labor. Finally, the fuel system added value to County's property, as a county highway shop with a fuel dispensing system is worth more than one without such a system. *See Delgadillo*, 104 NM at 479, 723 P2d at 248 (noting, "[a] parcel of land that has service available is more valuable than a comparable parcel without such service").

[¶15.] County and PRCF, however, argue that Sioux Equipment's installation was a mere replacement of the prior system. To the extent County and PRCF argue this as a matter of law, their argument is misplaced. Courts have rejected the suggestion that a replacement of analogous infrastructure cannot qualify as an improvement. *Delgadillo* involved the question whether a replacement of previously existing utility equipment constituted an improvement to real property within the meaning of that state's similar statutes of repose. 104 NM at 479, 723 P2d at 248. The work involved the relocation and extension of existing utility services (water, sewer, gas) to facilitate the construction of a new highway. The New Mexico Supreme Court stated: "Whether there was a previously existing [utility] service is unimportant, so long as the additions improved the realty[.]" *Id*. The court concluded that notwithstanding the previously existing utility infrastructure, "the installation of the gas lines was a permanent addition to real property, involving the expenditure of labor and money and making the property more useful and valuable," thereby making it an improvement to real property. *Id*.

_____

(. . . continued)
    mere repair or replacement, adds to the value of the property, and is permanent in nature." *Id*.

The court stated: "[W]e find no logical basis for concluding that improvements to utility systems, such as new pipe lines, cannot constitute physical improvements to real property." *Id.* *See also* Rosenberg v. Town of North Bergen*,* 61 NJ 190, 293 A2d 662 (NJ 1972) (finding improvement for the repavement of a road); Yakima Fruit and Cold Storage Co. v. Cent. Heating & Plumbing Co.*,* 81 Wash 2d 528, 503 P2d 108 (1972) (finding improvement that involved reinstallation of pipe, coils, hangers, and rods for a previously existing refrigeration system); Pinneo v. Stevens Pass, Inc., 14 WashCtApp 848, 545 P2d 1207 (1976) (finding improvement where company replaced certain portions of an already existing ski lift). Thus, replacements are not, as a matter of law, disqualified from being considered an improvement to real property. Under the "common sense" test previously discussed, the question is whether the addition is designed to make the property more useful or valuable as distinguished from *ordinary* repairs or replacements. *See supra* ¶¶11-12.

[¶16.] County and PRCF argue, however, that a material issue of disputed fact exists whether this work was an ordinary repair or replacement. They specifically argue that the circuit court erred in granting summary judgment on the ground that *County and PRCF* presented no evidence that the work performed by Sioux Equipment was more than an ordinary repair or replacement. They contend that: "Sioux Equipment retain[ed] the burden to establish that no genuine issue of material fact exists" on this issue. We disagree.

[¶17.] Although defendants bear the initial burden of showing entitlement to affirmative defenses in summary judgment proceedings, the burden of identifying

facts in avoidance of the statute of repose shifted to County and PRCF in this case. A statute of repose is an affirmative defense, and the burden of proof to establish an affirmative defense is on the party who seeks to rely on it. Clancy v. Callan, 90 SD 115, 118, 238 NW2d 295, 297 (1976) (citing Lang v. Burns, 77 SD 626, 97 NW2d 863, 865 (1959)). The burden of production, however, shifts in summary judgment proceedings. For the sole purpose of analyzing this procedural aspect of burden shifting in summary judgment proceedings, we consider the statute of repose in the same manner as we would consider a statute of limitations. Therefore, where a defendant, by motion for summary judgment, asserts this type of affirmative defense that bars an action "and presumptively establishes the defense by showing the case was instituted beyond the statutory period, the burden then shifts to the plaintiff to establish the existence of material facts in avoidance of the statute. . . [.]" Conway v. Conway, 487 NW2d 21, 23 (SD 1992). *See also* Huron Center, Inc. v. Henry Carlson, Co., 2002 SD 103, ¶11 n2, 650 NW2d 544, 548 n2 (providing: "Only when Defendants have presumptively established their defense by showing the action was brought beyond the statutory period . . . does the burden shift to [Plaintiff] to demonstrate material facts in avoidance of the defense.") (citing Wissink v. Van De Stroet, 1999 SD 92, ¶9, 598 NW2d 213, 215).

[¶18.]     In this case, Sioux Equipment met its initial burden of presumptively showing that the action was brought beyond the statutory period. In support of its motion for summary judgment, Sioux Equipment submitted Dale Peltier's affidavit. Peltier was an employee of Sioux Equipment who relied on the "Scope of Work" document and  established that more than ten years had expired since substantial

completion of work. His affidavit further established that any equipment that existed on the site prior to Sioux Equipment's work was removed by a third party before Sioux Equipment arrived. Peltier finally stated that Sioux Equipment's work "was not maintenance or a mere replacement of something that already existed. Our work was to install a completely new fuel storage and dispensing facility." This was sufficient to presumptively show entitlement to the statute of repose as a defense.

[¶19.] Because Sioux Equipment made its presumptive showing that the suit was not timely and that its work was not a mere ordinary repair or replacement, the burden shifted to County and PRCF to set forth specific facts refuting or disputing Sioux Equipment's showing. In response, however, County and PRCF only submitted Peltier's "Scope of Work" document that provided existing tanks were to be removed under a separate contract. County and PRCF did not introduce any facts suggesting that Sioux Equipment's work, even though it involved installation of a new fuel storage and delivery system, was a mere ordinary repair or replacement that did not also constitute an improvement to the real property. Instead, County and PRCF only argued that point. County and PRCF's argument was insufficient to prevent summary judgment.

[¶20.] County's and PRCF's argument was insufficient because SDCL 15-6-56(e) requires a response setting forth specific facts. "When a motion for summary judgment is made and supported as provided in § 15-6-56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in § 15-6-56, *must set forth specific facts* showing

that there is a genuine issue for trial." SDCL 15-5-56(e) (emphasis added). In

*Bordeaux*, this Court stressed:

> We require "those resisting summary judgment [to] show that
> they will be able to place sufficient evidence in the record at trial
> to support findings on all the elements on which they have the
> burden of proof." In fact, "SDCL 15-6-56(e) requires the
> opposing party to be diligent in resisting a motion for summary
> judgment, and *mere general allegations* and denials which do not
> set forth specific facts will not prevent the issuance of a
> judgment."

2005 SD 117, ¶14, 707 NW2d at 127 (citations omitted). County and PRCF did not,

therefore, meet their responsive burden of presenting specific facts precluding

summary judgment.

IV

[¶21.]        In the alternative, County and PRCF argue that CERCLA preempts

the statute of repose and imposes a discovery statute of limitations under which

they may bring a cause of action. *See* 42 USC § 9658. Commonly known as

"Superfund," CERCLA was enacted by Congress in 1980. CERCLA imposes

liability on persons responsible for the release of hazardous waste, and it applies to

cases that are brought under state law for property damage caused by

environmental contaminants that are released into the environment. 42 USC §

9658(a)(1). In such cases, CERCLA provides that, notwithstanding any contrary

state "statute of limitations," the time for bringing an action does not start to run

until the plaintiff knew or reasonably should have known that the damages were caused by the hazardous substance. 42 USC §§ 9658(a)(1) and (b)(4)(A).[5]

[¶22.] Applying CERCLA to the present case, County and PRCF argue that the date the statute of limitations began to run was when the fuel leak was discovered on County's property, February 20, 2003. The circuit court disagreed, relying on the latest federal court decisions holding that the plain language of CERCLA only applies to statutes of limitations, and because a statute of repose is substantively different than a statute of limitations, CERCLA does not apply to statutes of repose.

[¶23.] The highest federal court to consider this issue is the Fifth Circuit Court of Appeals. *See* Burlington N. & Sante Fe Ry. Co. v. Poole Chemical Co., Inc.,

---

5. CERCLA provides, in pertinent part:

> (a)(1) In the case of any action brought under State law for . . . property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

> (b)(4)(A) [T]he term "federally required commencement date" means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of this section were caused or contributed to by the hazardous substance or pollutant or contaminant concerned.

42 USC 9658(a)(1) and (b)(4)(A).

419 F3d 355 (5thCir 2005). The Fifth Circuit was presented with virtually identical facts and the same issue. In *Burlington,* a chemical storage tank leaked, and Burlington Northern conducted an emergency clean-up of the railroad right-of-way. The railroad then sought reimbursement from the owner of the storage tanks, and the owner brought a third-party claim against the seller of the tanks. The action was brought after the expiration of a Texas fifteen-year statute of repose, and the seller of the storage tanks moved for summary judgment based upon that statute.

[¶24.]    The Fifth Circuit concluded that CERCLA preempts statutes of limitations, but not statutes of repose. In doing so, it pointed out the substantive difference between a statute of limitations and a statute of repose:

> A statute of limitations extinguishes the right to prosecute an accrued cause of action after a period of time. It cuts off the remedy. . . . A statute of repose limits the time during which a cause of action can arise and usually runs from an act of a defendant. It abolishes the cause of action after the passage of time even though the cause of action may not have yet accrued.

*Id*. at 363.[6]  Acknowledging that this difference was "substantive" and not a matter of "semantics," and further acknowledging that Congress had failed to include statutes of repose within CERCLA's preemptive provision, the Fifth Circuit applied

---

6.    This Court also recognizes this substantive difference. Because a statute of repose begins to run from a date that is unrelated to the date of an injury:

> [The statute of repose] is not designed to allow a reasonable time for the filing of an action once it arises. Therefore, a statute of repose may bar the filing of a lawsuit even though the cause of action did not even arise until after it was barred and even though the injured person was diligent in seeking a judicial remedy.

Peterson, *ex rel*. Peterson v. Burns, 2001 SD 126, ¶41, 635 NW2d 556, 570.

the plain language of the federal statute, concluding that statutes of repose are not included within CERCLA's preemptive language. The *Burlington* court explained,

> [T]he reach of the plain language of § 9658 does not extend to statutes of repose like [the Texas statute]. Literally, § 9658 states that it only preempts state law when the applicable state *statute of limitations* "provides a commencement date which is earlier than the [federally required commencement date] – [there is] no mention of peremptory statutes or statutes of repose. The provision defines "commencement date" as the "date specified in a *statute of limitations* as the beginning of the applicable limitations period." [The Texas statute of repose,] however, is not a statute of limitations; it is a statute of repose, and the differences between statutes of limitations and statutes of repose are substantive, not merely semantic.

*Id*. at 362.

[¶25.] All recent federal district courts agree. *See* German v. CSX Transp. Inc., 510 FSupp2d 630, 633 (SDAla 2007) (concluding: "As discussed in *Burlington,* the text of § 9658 does not mention statutes or rules of repose but instead discusses only statutes of limitations. Under the principles of statutory construction, the plain language of § 9658 should be given effect."); McDonald v. Sun Oil Co., 423 FSupp2d 1114, 1127 (DOr 2006) (concluding: "This court agrees with the analysis of the *Burlington* court that there is a substantive difference between a statute of limitations and a statute of repose, and that . . . CERCLA extends only to statutes of limitations.").

[¶26.] County and PRCF argue that notwithstanding this authority, two other courts have determined that CERCLA preempts state statutes of repose. Those federal district court and state court of appeals cases were, however, decided in 1994, well before the Fifth Circuit Court of Appeals and all subsequent federal district courts held otherwise. The later decisions have recognized that the earlier

decisions like *Buggsi v. Chevron U.S.A. Inc.,* 857 FSupp 1427 (DOr 1994), were decided prior to *Burlington*, and did not consider the difference between a statute of repose and a statute of limitations. The more recent *McDonald* decision specifically noted *Buggsi's* omission, stating: "The *Burlington* court acknowledged that courts have sometimes failed to distinguish a statute of repose from a statute of limitations when analyzing the applicability of this section of CERCLA, and [*Burlington*] cited *Buggsi* and other cases. Nevertheless, the [*Burlington*] court noted that these types of statutes are quite different." 423 FSupp2d at 1127. County and PRCF's other opinion, *Chatham Steel Corp. v. Brown*, 858 FSupp 1130, 1150 (DFla 1994), was also decided prior to *Burlington* and it, too, failed to distinguish between statutes of repose and statutes of limitations. Furthermore, the debate in *Chatham Steel* was limited to whether South Carolina's statute of repose was preempted because it conflicted with CERCLA's liability provisions. 858 FSupp at 1151. Under the circumstances, we do not find County and PRCF's authorities persuasive. We find the Fifth Circuit and the more recent federal district court decisions more instructive.

[¶27.] County and PRCF argue that notwithstanding the federal authority on this subject, the legislative history of CERCLA requires a different result. This argument was considered in *Burlington*. *Burlington* acknowledged the apparent legislative intent behind CERCLA, but nevertheless concluded that plain language controlled over purported legislative intent. After first acknowledging Congress's apparent intent to extend statutes of limitations for long-latent diseases caused by

the release of hazardous substances, the Fifth Circuit nevertheless concluded that

the plain language of the statute prevailed:

> CERCLA's legislative history indicates Congress intended for §
> 9658 to preempt a state statute of limitations that deprives a
> plaintiff who suffers a long-latency disease caused by the
> release of a hazardous substance of his cause of action, but not
> to preempt a state statute of repose like [the Texas statute].

*Burlington*, 419 F3d at 364 (citations omitted). *Burlington* explained that unlike

discovering long-latent diseases under statutes of limitations, statutes of repose are

not concerned with when a party may discover an injury:

> Typically, a statute of limitations for an action sounding in tort
> starts to run on the date of the plaintiff's legal injury. When an
> injury is inherently undiscoverable, however, states often use
> the discovery rule to toll the running of the limitations period
> until the plaintiff "discovers, or in exercising reasonable
> diligence should have discovered, facts that indicate he has been
> injured." In contrast, awareness of injury is not a factor in
> determining when the time period of a statute of repose starts to
> run. Unlike a statute of limitations, "a statute of repose creates
> a substantive right to be free from liability after a legislatively
> determined period." In other words, a statute of repose
> establishes a "right not to be sued," rather than a "right to sue."
> Thus, with the expiration of the period of repose, the putative
> cause of action evanesces; life cannot thereafter be breathed
> back into it. In Texas, such statutes "represent a response by
> the [Texas] legislature to the inadequacy of traditional statutes
> of limitations and are specifically designed to protect
> [manufacturers] . . . from protracted and extended vulnerability
> to lawsuits."

*Id. at* 363-64.

[¶28.]     In addition to this substantive distinction, deferring to plain language

over purported legislative purpose and intent is a predominant theme in statutory

interpretation in federal and state courts. *Burlington* noted:

> In cases involving statutory construction, a court begins with
> the plain language of the statute. A court assumes that the
> legislative purpose of a statute is "'expressed by the ordinary

> meaning of the words used.'"  A court considers the language used in a statute as conclusive unless Congress has clearly expressed a contrary intent. . . .  Here, the reach of the plain language of § 9658 does not extend to statutes of repose[.]

*Id.* at 362 (citations omitted).  We follow similar rules of statutory construction:

> [W]e adhere to two primary rules of statutory construction.  The first rule is that the language expressed in the statute is the paramount consideration.  The second rule is that if the words and phrases in the statute have plain meaning and effect, we should simply declare their meaning and not resort to statutory construction.

Goetz v. State, 2001 SD 138, ¶15, 636 NW2d 675, 681.  Therefore, "[t]he intent of the statute must be determined from what the legislature said, rather than what this [C]ourt thinks the legislature should have said, and this determination must be confined to the plain, ordinary meaning of the language used by the legislature."  Hagemann *ex rel.* Estate of Hagemann v. NJS Eng'g, Inc., 2001 SD 102, ¶5, 632 NW2d 840, 843 (citing M.B. v. Konenkamp, 523 NW2d 94, 97 (SD 1994)).  *See also* Faircloth v. Raven Indus., Inc.*, 2000 SD 158, ¶6, 620 NW2d 198, 201 (providing: "Intent is ordinarily ascertained by examining the express language of the statute.  We therefore defer to the text where possible."); Delano v. Petteys*, 520 NW2d 606, 608 (SD 1994) (declaring: "In applying legislative enactments, we must accept them as written.  The legislative intent is determined from what the legislature said, rather than from what we or others think it should have said.").  In this case, the plain language of CERCLA only preempts state law when the applicable "state statute of limitations" provides a commencement date that is earlier than the federally required commencement date.  *See* 42 USC §§ 9658(a)(1) and (b)(4)(A).

Congress failed to include substantively different statutes of repose within this preemptive rule. Accordingly, the plain text controls.

[¶29.]     For the foregoing reasons, we affirm the circuit court's conclusion that Sioux Equipment's work was an improvement to real property and County's and PRCF's claims were barred by the statute of repose.

[¶30.]     Affirmed.

[¶31.]     GILBERTSON, Chief Justice, and KONENKAMP, and MEIERHENRY, Justices, concur.

[¶32.]     SABERS, Justice, dissents.


SABERS, Justice (dissenting on Issue 2).

[¶33.]     I respectfully dissent on Issue 2 as CERCLA preempts SDCL 15-2A-3, the statute of repose. Generally, remedial statutes are construed liberally in favor of a remedy or in favor of those entitled to the benefit of the statute. *See* Socony-Vacuum Oil Co. v. Smith, 305 US 424, 431, 59 SCt 262, 266, 83 LEd 265 (1939); *see also* Remedial Statutes, generally, 73 AmJur2d Statutes § 185 (updated March 2008). We should avoid the technical, strict construction the majority opinion applies, in favor of a liberal construction to promote justice and the intention of Congress.

[¶34.]     CERCLA was enacted to "impose[ ] liability on persons responsible for the release of hazardous waste . . . ." *Supra* ¶21. Moreover, CERCLA preempts "the applicable limitations period for such action (as specified in the State statute of limitations or under common law)" and replaces the limitation period with a

"federally required commencement date." 42 USC § 9658(a)(1). In this case, the statute of repose is a limitation on the action and should be replaced with the federal commencement date. If Congress amended CERCLA because "certain State statutes deprive plaintiffs of their day in court," *see* HR Conf Rep No 99-962 at 261, *reprinted in* 1986 USCCAN 3276, 3354, then a statute of repose should be interpreted to be "the applicable limitations period for [the] action." *See* 42 USC § 9658(a)(1). If the statute was properly interpreted liberally, then Congress' intent of giving "plaintiffs . . . their day in court" would be fulfilled.

[¶35.]     The majority opinion's strict interpretation of CERCLA thwarts Congressional intent. We should use common sense and hold that CERCLA preempts the statute of repose. Because the majority opinion reaches a decision contrary to the purpose of CERCLA, I dissent.